## LASERE *v.* ROCHEREAU.

Judicial proceedings during the war of the rebellion, within lines of the Federal army, by a private person on a mortgage, ending in a judgment and sale of the mortgaged premises, against one who had been expelled by the military authority of the United States into the so-called Confederacy, and who had no power or right to return to his home during the rebellion, held null, and a judgment which refused to vacate them reversed. *Dean* v. *Nelson* (10 Wallace, 172) affirmed.

ERROR to the Supreme Court of Louisiana, in which court several cases were consolidated. They came from it here as a single case.

*Messrs. J. A. & D. G. Campbell, for the plaintiff in error. No opposing counsel.*

Mr. Justice SWAYNE stated the facts of the case, and delivered the opinion of the court.

In May, 1863, the plaintiff in error was, and had been for

many years, a resident of the city of New Orleans. On the 9th of that month—being " a registered enemy" of the United States—a military order was issued that he should "leave that parish for the so-called Confederacy before the 15th instant." The order was obeyed. He proceeded to Mobile, and remained there until the capture of that place by the National forces in April, 1865. He thereupon returned immediately to New Orleans, and was not further molested there by the military authorities. The subjugation of the city of New Orleans by the forces of the United States became complete on the 6th of May, 1863. It remained thenceforward in their possession until the close of the insurrection. The absence of Lasere from New Orleans, like his departure, was enforced and involuntary. He intended to return, and, as soon as permitted to do so, did return and resume his residence. In the fall of 1863, after his expulsion, proceedings by executory process were instituted against him upon two mortgages for the seizure and sale of the mortgaged premises, consisting of a house and lot in New Orleans. The first order bears date on the 23d of November. On the 27th of that month the sheriff returned on the notice of demand of payment, that, " after diligent search and inquiry," he " was informed" that Lasere had " left the city and State without leaving an agent to represent him." A curator *ad hoc* was thereupon appointed, but it does not appear that he took any action. "After the legal delay had expired" the sheriff proceeded to advertise and sell the premises, and conveyed them to the purchaser. Lasere, after his return from Mobile, instituted the original cases to vacate those proceedings. They terminated in the adverse judgment which is before us for review.

It is contrary to the plainest principles of reason and justice that any one should be condemned as to person or property without an opportunity to be heard.* Scant time was allowed the plaintiff in error to prepare for his removal

---

* McVeigh *v.* United States, 11 Wallace, 267.

within the Confederate lines. During his absence he had no legal right to appoint an agent or to transact any other business in New Orleans.* This legal proposition has been so often and so fully discussed by this court that it is needless to go over the same ground again.

If the law were otherwise, it is to be presumed that any communication between Mobile and New Orleans was impracticable. ' Lasere doubtless knew nothing of the proceedings against him; and, if he had had such knowledge, he was powerless to do anything to protect his rights.

The point here involved was decided by this court in Dean v. Nelson.† It was there said: "The defendants in the proceedings"—meaning the original proceedings—"the appellees here, were within the Confederate lines at the time, and it was unlawful for them to cross those lines. Two of them had been expelled the Union lines by military authority, and were not permitted to return. The other, Benjamin May, had never left the Confederate lines. A notice directed to them and published in a newspaper was a mere idle form. They could not lawfully see or obey it: As to them, the proceedings were wholly void and inoperative."

The case thus condemned is substantially the one before us.

Judgment reversed, and the case remanded to the court whence it came, with directions to proceed

IN CONFORMITY TO THIS OPINION.

---

* Coppell v. Hall, 7 Wallace, 558.　　　　　† 10 Wallace, 172.