Guy Gilbert Ribaudo, J.
The plaintiffs, Michael Hmelo and George Tilipko seek to replevy three hunting rifles and a rifle scope from the possession of the Property Clerk of the Police Department of the City of New York or in the alternative, to receive money damages for conversion. This property was taken by the police from the plaintiffs on November 28, 1957, at the time of their arrest for felonious assault and illegal possession of firearms under section 1897 of the Penal Law. Subsequently, both plaintiffs pleaded guilty to the charge of unlawful possession of a shotgun in the Court of Special Sessions. The police during their investigation of the circumstances surrounding the arrests seized the property in question upon the ground that it (the property) was not held and used in a lawful manner. Thereafter, pursuant to statute, the property was turned over to the defendant, Police Property Clerk.
The plaintiffs contend that the property in question was legally purchased by them and legally owned. The defendant invokes the provisions of section 4.35-4.0 of the Administrative Code of the City of New York and asserts that the property was used in violation of the law and is subject to forfeiture and therefore is not recoverable.
*604 Subdivision f of section 435-4.0 casts upon the plaintiff the burden of proof to establish among other things lawful use of the property. This section provides: ‘ ‘ f. Lawful property right to be established. In any action or proceeding against the property clerk for or on account of any property or money in his custody, a claimant from whose possession such property or money was taken or obtained, or any other claimant, shall establish that he has a lawful title or property right in such property or money and lawfully obtained possession thereof and that such property or money was held and used in a lawful manner. ’ ’ (Italics supplied.)
The plaintiff George Tilipko unfolded a bizarre narrative. He testified that at 5:30 a.m. on the morning of November 28, 1957 (Thanksgiving Day) he and the coplaintiff, Michael Hmelo, were advised by two women that their boyfriends were being held captive and being beaten by five other men at the Lamplighters Social Club located on East 6th Street in New York City. Instead of seeking police assistance, these plaintiffs set out to the club with the intention of handling the matter with a show of armed force. He further testified that he and the coplaintiff took with them two shotgun rifles and a .45-ealiber automatic target pistol. When they arrived at the Lamplighters Club, in the words of the witness “ a brawl ” took place. When the shooting and fighting were over there were three persons wounded. Two of the wounded were the plaintiffs themselves. The plaintiff Tilipko was driven to Bellevue Hospital for treatment and was later joined by plaintiff Hmelo, who was brought by the police.
At the hospital, the plaintiffs were arrested by two detectives. Detective Mercia testified that he was assigned to investigate the shootings. When he went to the home of plaintiff Tilipko he came upon an arsenal of rifles, shotguns and pistols with ammunition. Upon information received, he found another cache of similar firearms in the cellar of 523 East 5th Street, which was across the street from the home of plaintiff Hmelo. In all, 27 rifles, 4 shotguns, and 17 pistols were found. Both plaintiffs protested innocence — regarding the 1 ‘ Lamplighters ’ Brawl ” — the charge of felonious assault and illegal possession of firearms — and the use of the allegedly converted rifles in the shooting, this in the face of their having pleaded guilty to the charge of unlawful possession of firearms in violation of section 1897 of the Penal Law. Both plaintiffs brazenly testified to possessing criminal records. The testimony also revealed that the cache of guns and rifles, other than the three in suit, that *605 were found, were stolen property. These plaintiffs pleaded guilty to receiving these stolen rifles and guns in New Hampshire.
Both plaintiffs insisted that the rifles involved in this action were at no time a part of or were comingied with the “ caches.” Nonetheless, there was no affirmative proof submitted by the plaintiffs to contradict the testimony of the police officer who stated that the three rifles and accessories were found by him shortly after the arrest in the apartment of Tilipko when he discovered the other firearms.
The plaintiffs’ possession of licenses for hunting does not establish hunting as their primary activity when considered in the light of the charge of receiving stolen rifles and guns and ammunition and their admitted use of these weapons to allegedly “ rescue ” their friends.
In the recent decision of Matter of Grauling v. Kennedy (17 Misc 2d 1021) wherein the court refused to disturb the determination of the Police Commissioner denying the renewal of a pistol permit to a person of unblemished character because to do so might furnish temptation to the youthful son of the applicant to use the lethal weapon, the distinguished Justice Samuel H. Hoestadter of the Supreme Court wrote the following (p. 1025): “ Under the present state of the law, licensing is required only for arms that may be concealed and not for larger weapons such as rifles and shotguns. It is to be questioned whether legislative action should not be taken to require permits for the use of all firearms. Recent events have seen the meaningless slaying of two young women by the shotgun of a frustrated and unbalanced misfit. Another tragedy occurred when a rejected suitor shot his former teenage fiancee with a .22-caliber rifle. Had there been stricter requirements for the possession of such weapons, three innocent lives might have been spared.”
Subdivision f of section 435.40 is not satisfied alone by a showing of lawful source (e.g., see, United States v. Manufacturers Trust Co., 198 F. 2d 366; United States v. Pagan, 140 F. Supp. 711; Goldberg v. Leuci, 123 N. Y. S. 2d 154); it goes further. Claimant must show ‘ ‘ such property was held and used in a lawful manner.”
In Sochemaro v. Rossetti (6 Misc 2d 23), a Justice of this court (Wahl, J.) confronted with lawful acquisition of a motor vehicle, nevertheless emphatically denied replevin thereof, when the plaintiff, though acquitted in a prior criminal proceeding for illegal possession of narcotics, failed to satisfy the court that the car, at the time-of-seizure was being “ used in a lawful manner. ’ ’ Although in Sochemaro, the forfeiture of the car was *606 specifically supported by section 3353 of the Public Health Law, (and the forfeiture provisions of subdivision 10 of section 1897 of the Penal Law with respect to firearms do not apply here), nevertheless, the force of manifest public policy was paramount (p. 26): “ The City of New York could have instituted proceedings for the forfeiture of this car under the Public Health Law. Instead, the city, through the property clerk, is resisting this replevying action by invoking as its defense the Public Health Law and Administrative Code provisions. This, the city may do. Since this vehicle was used in violation of law and is subject to forfeiture, plaintiff has no lawful property right therein and this court, as a matter of public policy, will not lend its aid to plaintiff to recover such property. This is true under established common-law principles. (Gonch v. Republic Stor. Co., 245 N. Y. 272; Flegenheimer v. Brogan, 284 N. Y. 268.) ”
“ Since these are replevin actions, we concern ourselves not so much with the defendant’s right to hold as with the plaintiff’s right to recapture.” (Italics supplied.) These are the words of Judge Desmond of the Court of Appeals in the case of Eofferman v. Simmons (290 N. Y. 449, 454).
Upon all the evidence the plaintiffs have failed to sustain the burden of proof that the property involved was held and used in a lawful manner. The plaintiffs’ proof may have established lawful title and lawful acquisition but completely failed to prove the third requirement of the statute, i.e., lawful use.
Accordingly, the court grants judgment to the defendant.