Paul R. Shaw, J.
This is a replevin action to recover possession of an automobile allegedly wrongfully taken from the plaintiff, Alphonse Angrisani, by a New York City police officer on July 12, 1961 and wrongfully withheld by the defendant, Thomas Bosetti, the Property Clerk of the Police Department of the City of New York.
The police officer, Daniel De Castro, testified that he arrested the plaintiff while the plaintiff was seated in his parked automobile. He charged him with the felony crime of “ policy ” or *525 “ the numbers game ”, pursuant to section 974-a of the Penal Luav, and Avith the misdemeanor of possession, pursuant to section 975 of the Penal Larv. Immediately thereafter the officer searched the vehicle and found a specially constructed and concealed compartment in the right front door, not customarily found in cars. From this compartment he took 32 envelopes containing 125 slips, bearing a total of 6,032 numbers, of the kind knoAAm as “ policy ” slips, and $120 in cash. The officer seized the automobile, the papers and the money. The plaintiff Avas held for the Grand Jury, Avhich refused to indict.
The plaintiff uoav seeks the reco\*ery of the automobile but not the papers nor the cash. The defendant Property Clerk resists by invoking section 435-4.0 of the Administrative Code of the City of Ncav York. That section (subd. e, par. 1) thereof, provides that “ Where moneys or property * * * have been used as a means of committing crime or employed in aid or furtherance of crime * * * or have been employed in or in connection Avith or in furtherance of any such gambling activity, a person Avho * * * so used, employed, sold or held any such moneys or property, or permitted or suffered the same to be so used, employed * * * or Avho Avas a participant or accomplice in any such act * * * shall not be deemed to be the laAAfful claimant entitled to any such moneys or property.” Subdivision f thereof provides that “ In any action or proceeding against the property clerk * '* * a claimant from Avhose possession such property or money Avas taken * * * shall establish that he has a laAvful title * * # and that such property or money avus held and used in a laAA'ful manner.”
By stipulation, this case Avas tried jointly Avith an identical replevin action brought by one Joseph JacoAÚno. The parties agreed that the decision should be the same in each case. JacoA’ino Avas arrested by another police officer, John La Lotta, on the same date, July 12, 1961, and at the same location. He too Avas charged Avith violation of sections 974-a and 975 of the Penal Luav. After his arrest, his car Avas also searched and a similar secret compartment Avas found. From his compartment Avere taken 24 envelopes, containing 72 slips bearing 3,613 numbers, and $167.75 in cash. His automobile, papers and cash Avere likeAvise seized. He too Avas held for the Grand Jury, Avhich refused to indict.
The issue here as to the laAvful use of the car must be decided de novo. The failure of the Grand Jury to indict the plaintiff is not binding in this civil action as proof that he did not participate in such unlaAvful conduct. The parties are different and an acquittal ascertains no fact, as a conviction does. (Schindler v. *526 Royal Ins. Co., 258 N. Y. 310, 312, 313.) In an identical situation, involving a violation of the Public Health Law, Judge Maurice Wahl persuasively pronounced (Sochemaro v. Rosetti, 6 Misc 2d 23, 24) that “ Irrespective of plaintiff’s acquittal in the criminal court, and whatever the basis for such acquittal, the issues herein as to the alleged use of the car are to be determined de novo by this court.”
The evidence clearly establishes that this automobile was used in the conduct of a “ policy business ” with the plaintiff’s active participation. There is, to begin with, the existence of the unusual compartment and its unmistakable contents. There is very substantial evidence of prior observation and investigation justifying the arrest, followed by the search and seizure.
The arresting police officer, De Castro, testified that he had observed this plaintiff the day before, July 11, 1961, seated in his car, parked in the same location and with the hood raised. He saw Jacovino drive up, park behind Angrisani, walk over to him and hand him an envelope. Jacovino then returned to his own car and drove away. The officer saw a third car drive up, park, and one Santuro by name, get out and give the plaintiff an envelope before driving off. Finally one Prisco by name, came over to the car, sat in it for a while and then left. Finally, Angrisani drove off. On the next day, July 12, 1961, Angrisani again parked at the same location, Prisco being seated alongside of him. The officer observed Jacovino drive up and park in front of the plaintiff. Finally Santuro drove up on the other side of the street and parked. It was at this point that the police officer, De Castro, put the plaintiff Angrisani, as well as his companion, Prisco, under arrest and then searched the car, seizing it and the contents of the compartment. Angrisani asked the officer, why don’t you arrest Eudy?
The other officer, La Lotta, testified that on July 10, 1961, two days before the arrest, search and seizure, he had observed Jacovino drive up and park at this same location. He saw Jacovino leave the car, go up to another car in which Angrisani was seated with Prisco and hand Angrisani an envelope. He then saw Jacovino drive away in his own car. On July 12, 1961 La Lotta saw Jacovino drive up to the same location and park. La Lotta proceeded to place Jacovino under arrest and to search the car, seizing it and the contents of its secret compartment. Jacovino said to him, this is all the work I have today, why don’t you see Eudy? La Lotta said the lid of the compartment was held closed by a magnet so that it was difficult to see when closed.
*527 The officers testified they had received prior information from a confidential source that this location was being used as a “ drop ”, together with the names of both of these plaintiffs and descriptions of their cars. They checked their records and found each had a prior conviction. La Lotta knew Jacovino by sight and name.
Angrisani testified that he bought his car the week before for “about” $250, from one Phil Piro, but produced no bill of sale. The parties stipulated the value of his car and of Jacovino’s car to be $10 each. Angrisani claimed that he never previously knew of the existense of the compartment nor of its contents. His companion Prisco, who was seated alongside of him, which would place him next to the right front door, in which the compartment was located, was not produced. Frisco’s presence in the car on July 11 and 12 was not explained. No testimony was offered about the events of July 11. He admitted a prior conviction for policy. Jacovino did not take the stand at all.
The plaintiff contended that the search and seizure were illegal and that the “policy” slips were improperly admitted into evidence, on the authority of Mapp v. Ohio (367 U. S. 643). That case says (p. 655) that “ all evidence obtained by searches and seizures in violation of the Constitution is, by the same authority, inadmissible in a state court.” He argues that without the ‘ ‘ policy slips ’ ’ there is no substantial evidence of the unlawful use of his automobile. Since Mapp v. Ohio involved a criminal prosecution, the plaintiff also cited Chambers v. Rosetti (36 Misc 2d — ) a case in this Civil Court in Kings County, in which this new exclusionary rule was applied to a civil action identical to the case at bar. That action, however, is on appeal. It appears further that a contrary view was later taken by the Appellate Division in the Second Department in Sadder v. Sadder (16 A D 2d 423) in which it was held that the newly pronounced exclusionary rule for State courts applies to governmental agencies, not to private individuals, and to State criminal trials, not to State civil trials. There are strong dissenting opinions in this last case urging that the new exclusionary rule should apply alike to civil as to criminal actions.
Mapp v. Ohio (supra) is predicated upon an unlawful search and seizure. In that case certain local police officers entered the defendant’s residence without a warrant, pursuant to information that a person was hiding there who was wanted for questioning in connection with a bombing and that there was policy paraphernalia being hidden there. The officers forced *528 their way into the two-family house, refused to permit, the defendant’s lawyer, who subsequently arrived, to enter or to see the defendant, used force on the defendant, possibly excessively, forced the defendant upstairs and searched the building from top to bottom, finding obscene literature, for possession of which the defendant was prosecuted. The Ohio Supreme Court sustained the conviction, although its opinion suggested there was an illegal search (170 Ohio St. 427, 431). The United States Supreme Court reversed, imposing the exclusionary rule on the State court against the use of evidence illegally obtained.
Whether or not Mapp bars admission of the slips into evidence depends upon whether or not they were seized by an unreasonable search. “It is evident that Mapp does not bar the admission, as evidence, of the revolver found in McNair’s car, unless it was seized by an unreasonable search, for 1 It is [only] unreasonable searches that are prohibited by the Fourth Amendment. ’ ” (People v. Lane, 10 N Y 2d 347, 352.)
In the case at bar there was a lawful arrest. Insofar as the plaintiff was charged with operating a policy business, a felony under section 974-a of the Penal Law, this court finds that the arresting officer had reasonable cause for believing a felony had been committed and that the plaintiff had committed it. Section 177 of the Code of Criminal Procedure provides that “A peace officer may, without a warrant, arrest a person * * * 4. When he has reasonable cause for believing that a felony has been committed, and that the person arrested has committed it, though it should afterward appear that no felony has been committed, or, if committed, that the person arrested did not commit it.” Insofar as the plaintiff was charged with possession of “policy” slips, a misdemeanor under section 975 of the Penal Law, subdivision 1 of section 177 of the Code of Criminal Procedure permits a peace officer to make a warrant-less arrest for a misdemeanor only if “ committed or attempted in his presence ”. (People v. Tedesche, 3 A D 2d 220, 221.) This court finds that the misdemeanor charged was committed in the presence of the arresting officer, even though the slips were found in the car after the plaintiff was removed, since possession is capable of being a continuing offense. As was well said by Mr. Justice Matthew M. Levy in Millea v. City of New York (25 Misc 2d 369, 373-374): “ an arrest for the misdemeanor of control or possession may be justified without a warrant, notwithstanding that the accused is not personally present at the place involved or does not have on his person the object in question — since it is not necessary for him to be personally there or personally to have the forbidden object to be guilty of the misde *529 meaner charged. By so much is the rule, requiring that the alleged crime be committed in the presence of the arresting officer, relaxed. In short * * * his guilt need not be personally observed to justify his arrest.”
The arrest being lawful, an incidental search is permissible. (People v. Lane, 10 N Y 2d 347, 353; Williams v. United States, 273 F. 2d 781, 783.) The issue is one of reasonableness. “ What is a reasonable search is not to be determined by any fixed formula. The Constitution does not define what are ‘ unreasonable ’ searches and, regrettably, in our discipline we have no ready litmus-paper test. The recurring questions of the reasonableness of searches must find resolution in the facts and circumstances of each case.” (United States v. Rabinowitz, 339 U. S. 56, 63.) That the plaintiff was arrested first and then the search was made simply complies with the general rule in such cases. (Lee v. United States, 232 F. 2d 354.) This court finds that the search of the automobile was incidental to the lawful arrest and was reasonable.
In view of the foregoing, this court is of the opinion that the Mapp case is inapplicable. There was a lawful arrest followed by a lawful search and seizure. The motion by the plaintiff to strike the defendant’s Exhibit A consisting of envelopes containing slips bearing numbers is denied. The plaintiff having failed to sustain the burden placed upon him by subdivision f of section 435-4.0 of the Administrative Code of the City of New York, that the automobile “was held and used in a lawful manner ”, judgment is rendered in favor of the defendant.