Maurice Wahl, J.
In this plenary replevin action for a 1963 Chevrolet, the essential facts are not in dispute.
One Leon Williams, son of the plaintiff, owned the aforementioned vehicle. At about 3:00 a.m., on October 8, 1966 Leon Williams drove his vehicle to the area of 71st Street and Broadway, New York City, and there parked it at the curb. He then proceeded on foot to a restaurant nearby. After leaving the restaurant he was accosted by a female who was engaged in prostitution. In return for $20, which Williams handed her, she arranged to meet him in a certain room in a neighboring hotel. They were to go to the hotel separately to avoid suspicion. Williams went to the hotel as planned and waited. When she failed to come, he departed. Soon after, he met this female with a male companion. A quarrel ensued and Leon *63 Williams went back to bis parked car, took a gun from the glove compartment, returned to the sidewalk where the other two were standing and with this gun shot and killed both the female and male companion. The act on the part of Leon Williams merely emphasizes the need for proper legislation to control the free use and ownership of firearms.
The culprit was apprehended some five or six hours after the shooting at his residence on West 80th Street, in New York City. The police at the same time also recovered the murder weapon at the residence. Thereafter the police also took possession of the parked vehicle at 71st Street and Broadway— some nine blocks from where Leon Williams was apprehended and the murder weapon was found.
On December 12, 1966, Leon Williams sold his aforesaid motor vehicle to his father, James Williams, the plaintiff herein. On May 5, 1967, Leon Williams was sentenced to a term of 10 to 25 years in the State prison, where he is presently confined at Auburn, New York.
The defense interposed here rests upon two grounds. First, that as Leon Williams’ civil rights are suspended by reason of his conviction and sentence as aforesaid, his sale and assignment of his motor vehicle to his father, plaintiff herein is invalid. Second, that the provisions of section 435 of the New York City Charter and section 435-4.0 of the Administrative Code of the City of New York require the forfeiture of the vehicle.
The first contention and defense is specious and totally without merit. The authorities submitted were not in point and the court was required to do independent research to demonstrate the invalidity of this defense.
Neither Matter of Layton v. Rosetti (Geller, J.); Matter of Szell v. Nanna (Helman, J.), nor Matter of Turley v. Police Property Clerk (Dickens, J.) sustains the defense position. Each of those cases was a special proceeding under article 78 of the Civil Practice Act. As was properly pointed out by each of these learned jurists, the procedure is a plenary replevin suit. Thus the dismissals of each of those proceedings were proper, but are no authority for the defense herein. In each of those proceedings, that a convicted felon is under a disability to prosecute a civil right is merely obiter dictum.
Even so, in a proper plenary suit, the court held with unassailable logic and reason, that since a convicted felon may be sued and thus afforded resort to defense thereof, a resort to use of civil rights (Civ. Prac. Act, § 165; omitted in CPLR, but cf. CPLR 2103 (subds. [b] and [c]); 2303) is available. This is amply demonstrated by the decision in Matter of Weber (165 *64 Misc. 815, 816-817) where the court said: “ Section 510 of the Penal Law now states a rule which has existed throughout the greater portion of the history of this State. Nevertheless, its meaning today, as in earlier times, is by no means well settled. (La Ghapelle v. Burpee, 69 Hun, 430, 440.) There is no doubt that the use of court process is a civil right. Section 10 of the Civil Rights Law expressly so provides. Yet a literal proscription of use by a convict of all civil process under any and all circumstances would eventuate in forfeiture of property rights of convicts. No such forfeitures are today among the penalties inflicted upon felons. Moreover, commitment to prison does not afford immunity to a prisoner against suit brought by an aggrieved party. (Civ. Prac. Act, § 165.) And since a prisoner can be sued while at the same time he is subject to neither direct nor indirect forfeitures of property because of his criminality, he must have the right to use court process to the extent necessary to defend himself in a suit. The rule resulting from the necessities of the situation and one amply supported by authority is that though an imprisoned felon cannot prosecute a suit or institute a special proceeding he can defend himself in an action or proceeding instituted against him. (Bowles v. Habermann, 95 N. Y. 246, 250); Green v. State, 251 App. Div. 108; Bonnell v. R. W. & O. R. R. Co., 12 Hun, 218, 219, 220.) ”
This rationale was further supported in Rowland v. Smith (52 N. Y. S. 2d 362).
Even a convicted felon is not barred from making an assignment or sale of his property. (Bamman v. Erickson, 259 App. Div. 1040.) There the court specifically overruled the contention that plaintiff’s assignor, because he was a felon, could not while in a State prison make an assignment of the cause of action because of the disabilities imposed upon a felon by section 510 of the Penal Law.
Nor does a receiver of a felon’s property, who succeeds thereto by operation of law, lose the right. In Kugel v. Kalik (176 Misc. 49, 50, affd., 262 App. Div. 823) the court in denying a motion to dismiss the complaint said: 1 ‘ It is well settled that the loss of civil rights pursuant to section 510 of the Penal Law does not deprive the prisoner of the right to receive or transfer property and that it likewise does not operate as a forfeiture of the prisoner’s property. ”
It is to be noted that at bar the assignment was made before the sentence was imposed. Thus, when that assignment was made, Leon Williams possessed all his civil rights and therefore no encumbrance to or suspension of his civil rights existed. *65 He Was free to fully exercise such civil rights. (Rowland v. Smith, supra.)
The matter contained in section 510 of the Penal Law is now contained in section 79 of the Civil Bights Law. When the Legislature made the transfer, no change in the substance of the statute was made. That the Legislature was aware of the Well-embedded construction of section 510 of the Penal Law is patently clear. The changeover was effected on September 1> 1967. If any other construction or intent was in the legislative mind it could have overruled those judicial determinations contrariwise.
As to the second defense under section 435-4.0 of the Administrative Code of the City of New York, this court finds little to support such defense. The cited section, insofar as relevant provides as follows (subd. f): “In any such action or proceeding, a claimant who derives his title or right by assignment, transfer or otherwise from or through the person from whose possession such property or money was taken or obtained, shall further establish that such person had a lawful title or property right in such property or money and lawfully obtained possession thereof and that such property or money was held and used in a lawful manner. ”
The contention by the plaintiff that section 435-4.0 is violative of the State and Federal Constitutions and hence unconstitutional does not require much consideration. That argument is rejected.
This court had first written on this subject in Sochemaro v. Rosetti (6 Misc 2d 23); my colleague, Judge Bibatjdo, wrote in 1959 in Hmelo v. Rosetti (18 Misc 2d 603); and finally Judge Shaw wrote in 1962 in Angrisani v. Rosetti (36 Misc 2d 523). In all these cases, the instrumentality used in the commission of the felony was the immediate and causal property thereto; i.e., Sochemaro (carrying narcotics in the car); Hmelo (firearms in the auto); both instrumentalities were intended to be and were used in the commission of the felony; the firearms were transported to the scene with intent there to be used; Angrisani (the policy slips were found in the motor vehicle, in a secret compartment and it was used in the conduct of a policy business; and again both instrumentalities were used in the crime). Thus each case is distinguishable.
The motor vehicle here was used by Leon Williams, the assignor and now the convicted felon, for the purpose of transporting himself to a restaurant. The nature of the crime, to wit, the homicides and surrounding circumstances, indicate he did not operate the motor vehicle with a view to committing *66 the murders in which he was subsequently involved. The meeting with the prostitute was entirely accidental. In short the motor vehicle was not connected with nor used to aid or further the commission of a crime. If any logic exists in the situation and if the defense contention is sound then it must follow that all of Leon Williams’ property should be forfeited, i.e., his clothing, his jewelry, his bank account, stocks and bonds and even his real property, if any. Surely the thrust of the legislative intent under the Administrative Code is not such. What was intended was that such property, as was the instrumentality in the commission of the crime be taken, none other.
The court concludes that there is no merit to the defenses interposed. Judgment for plaintiff.