Jerome W. Marks, J.
This action was tried bef ore the court without a jury. Findings of fact and conclusions of law were waived.
The suit at bar is in replevin and is brought against the Property Clerk of the Police Department of the City of New York to recover from the said Property Clerk the bearer bond of the Greenburgh Mount Pleasant Union Free School District (New York State) No. 1, 3.40% issue of 1964 due July 1, 1967, matured value in the sum of $5,000, together with coupons attached.
The said bond is in the custody and possession of the defendant, Property Clerk. The bond was delivered by plaintiff to the police authorities after notice to him that claim was made that it was stolen.
Included in the action as parties defendant are Newburger, Loeb & Company (referred to as Newburger), Insurance Company of North America (referred to as INA), and Hans Johansen, a detective attached to the Police Department of the City of New York.
All persons having an interest in the said bond and/or the outcome of this litigation are now before the court, and the court has jurisdiction over their person.
Included in plaintiff’s demand for relief is a demand in the alternative that, in the event the subject bond and attached coupons are not available for delivery, plaintiff have judgment for the sum of $5,250 and interest thereon from July 3, 1967. Defendants Newburger and INA demand that the complaint be dismissed against them, and INA asserts in a cross claim that it is entitled ‘ ‘ to receive * * * immediate possession ’ ’ of the bond from the defendant Property Clerk.
Defendant Newburger, a stockbroker age firm, asserts that it is the rightful owner of the bond and that it assigned its right, title, and interest in the said bond to its insurer, INA. These defendants and the Property Clerk dispute that plaintiff is a bona fide owner of the bond with its coupons attached.
Plaintiff’s testimony is that he came into rightful possession of this bearer security either in late January or early February, 1967.
For many years prior to June 26, 1967, plaintiff was engaged in business as a commercial factor, doing business as Midtown Commercial Corp., of which he was the sole stockholder.
Plaintiff’s testimony reveals that, for a period of over five years prior to January-February, 1967, he had ‘1 numerous transactions ’ ’ with one Louis V. Ostrer involving the discount *208 ing of notes, trade acceptances for him amounting to one million dollars, and that, during this period, Ostrer was engaged in numerous business enterprises, and he was the general agent of Canada Life Insurance Company.
Plaintiff testified that, in the latter part of January or early February, 1967, plaintiff’s corporation was the owner of Ostrer’s notes, which were unpaid and protested, and Ostrer was thus indebted to the corporation in an amount between $2,000 and $3,000. At this time Ostrer came to plaintiff with five bearer bonds with coupons attached, each said bond being in the face value of $5,000.
The bond that is the subject of this suit is one of these bonds. Ostrer required a loan, and plaintiff thereupon arranged with him to liquidate his debt owing plaintiff’s corporation and gave Ostrer $22,000 or $23,000 in cash, and plaintiff in turn received possession of the bonds as security for a loan that was to be repaid in a few days. The loan was not paid. One of these bonds became due in June, 1967, which was cashed and paid.
According to plaintiff, at the time the first bond became due, he was then out of business; he did not have a bank account.
One Werger, who was operating as Roger Trading Company or Corporation out of plaintiff’s office, put this first bond through Werger’s bank for collection.
It also appears that Mr. Werger was in need of cash, and plaintiff loaned three of the bonds to him so that Mr. Werger could borrow money from his bank. The bank loan was granted and credited to the Werger account, and then the lending bank notified Mr. Werger that it was informed that the bonds were stolen, and the bank delivered the bonds to the New York City Police Department. Plaintiff voluntarily delivered the fifth bond, the subject of this lawsuit, to Detective Johansen.
Cross-examination of plaintiff revealed that plaintiff’s loan to Ostrer was a personal one and that plaintiff had the required amount of cash in his office vault; pressed further on cross-examination, plaintiff testified that he knew in what amount his corporation was indebted to him; that he always had ready cash available at his office and suggested that, if inspection be made of his checks, it could be seen “that every single day” he ‘1 drew anywhere from fifteen to fifty thousand dollars in cash from the bank.” Defendant’s cross-examination of plaintiff disclosed that Ostrer was always in need of cash. Defendants Newburger and INA rely upon plaintiff’s testimony that he never asked questions of Ostrer “ because I didn’t want him to tell me any lies. ’ ’
*209 But this is indeed negatived by the rest of plaintiff’s answer on further cross-examination:
“Sol didn’t ask him. I know he needed money. I felt he was good for it. He gave me a good piece of paper. I would give him.
“ Q. You didn’t want him to tell lies, referring to Mr. Ostrer — what do you mean?
‘ ‘ A. Sometimes he would say he needs it for two days and it would wind up into two weeks. He would say to me discount this piece of paper, due the 15th. I will pick it up the 8th. He never picked it up. I would wait until the 15th and put it through.
“ Q. Was there any agreement entered into as to when the funds would be returned?
‘ ‘ A. He said it would take anywhere from a couple of days to two weeks. He said he was getting an advance from the Canada Life and he would be able to give me back my money. ’ ’
Utterly lacking in the case is proof that plaintiff knew that the bond in question or the other bonds were stolen or had been the property of defendant Newburger at the time of the loan by plaintiff to Ostrer.
Defendants Newburger and INA sought to prove through the testimony of the Newburger cashier that the bonds were stolen, and while this testimony is lacking in the required weight from which it can be fairly deduced that this or the other bonds were stolen, this court will assume, arguendo, that these bonds are part of a larceny or burglary or other criminal act practiced on Newburger. However, this trial court finds from the credible evidence that plaintiff had no notice of any criminality tainting the bond or bonds, nor are there any circumstances here present which required plaintiff to make an inquiry.
Notwithstanding this, defendants contend that subdivisions e and f of section 435-4.0 of the Administrative Code of the City of New York bar plaintiff from prevailing herein.
There is no available legal authority interpreting the section 435-4.0 of the Administrative Code with reference to the right of bona fide purchasers of stolen securities or other negotiable instruments (proceeds of criminal acts) to recover these from the Police Department Property Clerk. Hence this court makes the interpretation.
Subdivision e (par. 1) and subdivision f of section 435-4.0, relevant in this action, state, in part:
‘ Where moneys or property have been unlawfully obtained or stolen or embezzled or are the proceeds of crime or derived through crime * * * a person who so obtained, received or derived any such moneys or property * * * . or was a participant or accomplice in any such act, or a person who *210 derives his claim in any manner from or through any such person, shall not be deemed to be the lawful claimant entitled to any such moneys or property.
“In any such action or proceeding, a claimant who derives his title or right by assignment, transfer or otherwise from or through the person from whose possession such property or money was taken or obtained, shall further establish that such person had a lawful title or property right in such property or money and lawfully obtained possession thereof and that such property or money was held and used in a lawful manner.”
It has not been shown to the satisfaction of this trial court that plaintiff was a participant or accomplice in any larceny, burglary or any other criminal act referable to the subject bond or bonds, nor can this trial court conclude from the credible evidence that plaintiff stands in the shoes of or is the successor in interest of any such participant or accomplice.
This trial court holds that the language of the sections of the Administrative Code pertinent in this lawsuit does not bar a bona fide purchaser of a stolen security or other negotiable commercial paper from prevailing in an action in replevin against the Property Clerk and the true owner of a stolen security. Those who are barred from such success are persons who are finders or who have notice of the illegal activity through participation or who by reason of the circumstances are charged with knowledge of the criminal act and under a duty to make inquiry or those persons who are the heirs, distributees or personal representatives of the participant or accomplice in the illegal action referable to the money or property.
To require a bona fide purchaser to make inquiry as to a negotiator’s title to a bearer bond or other negotiable instrument would indeed violate the clear intention of the rules that govern the law merchant.
This is not the intent of subdivisions e and f of Administrative Code.
Any other interpretation of the sections of the Administrative Code pertinent here would negate and nullify existing statutory enactment, always zealous in the protection of the bona, fide purchaser of a security investment (Uniform Commercial Code, § 8-302).
The commercial world demands that the bona fide purchaser be assured that the security he takes for value in due course of business, even though it be from a thief, is free from attack.
We find that Carlos L. Israels commented upon the necessity of the required protection (McKinney’s Cons. Laws of N. Y. *211 Book 62%, Part 3, p. 158) thus: u The concept of a free capital market clearly requires that investment securities be negotiable, so that a bona fide purchaser for value and without notice — even a purchaser from a thief — can take the instrument free of defenses of the issuer and equally free of claims or equities of prior ownership.”
Prior to the enactment of the Uniform Commercial Code, the bona fide purchaser of stolen bonds was deemed to be a holder in due course (Gruntal v. United States Fid. & Guar. Co., 254 N. Y. 468). This has ever been the law.
Reference is made to Stricker v. Buncombe County (205 N. C. 536). There plaintiff purchased for value in due course of business a municipal bridge bearer bond with its interest coupons attached. For the purposes of the action it was agreed that the bond was stolen together with other securities from their true owner.
It is significant that the court in the cited case discussed the difference between a lost or stolen chattel and a negotiable security, whether lost or stolen. There the court stated (p. 538): “ It is elementary law that one who finds a lost chattel, although it has not been abandoned, is entitled to possession against all persons except the true owner. With respect to the loser, the title is unaffected by the mere incident of loss, and he may reclaim his property from the finder.
“ To this rule there is a generally recognizable exception if the property consists of negotiable securities. Although the thief or finder of a negotiable instrument can acquire no title against the real owner, still, if the instrument be endorsed in blank or be made payable to bearer, a third party acquiring it from the thief or finder, bona fide, for a valuable consideration, before maturity and without notice of the loss, may retain it as against the true owner upon whom the loss falls. Calvert’s Daniel on Negotiable Instruments (7th ed.), section 1731.
"To a large extent negotiable securities take the place of money. ‘ It would be most embarrassing therefore,5 it is said, ‘ if every taker of such paper was bound, at his peril, to inquire into the title of the holder, and if he was obliged to take it with all the imperfections and subject to all the defenses which attach to it in the hands of the holder, ft has, therefore, become the settled rule that a thief or any other person having possession of such paper fair upon its face can give a holder in due course a good title to it against all the parties thereto as well as the true owner. It may be taken to be the well-settled rule of law that the transfer of stolen commercial paper, negotiable by *212 delivery, to a bona fide purchaser for value, without notice and before maturity, vests him with a good title against the world. ’ 3 R.C.L. Bills and Notes, see. 210.”
We see then that the common law is fully and completely expressed in section 8-302 of the Uniform Commercial Code and adequate protection is afforded the bona fide purchaser who takes delivery of an investment security.
We are not here dealing with an automobile used for gambling purposes and seized by police authorities. (Rivera v. Rosetti, 38 Misc 2d 1030), nor do we have here a gambler seized in a dice game in a raided premises with large sums of money in his pockets (Goldberg v. Lend, 123 N. Y. S. 2d 154); nor is this a case where rifles have been seized after a shooting episode (Hmelo v. Rosetti, 18 Misc 2d 603).
Plaintiff is a commercial factor whose business it is to deal with persons in need of cash and to make loans on commercial paper or other security. This was his practice with Mr. Ostrer over a period of years. There was no reason for plaintiff to suspect that this latter bond transaction with Mr. Ostrer was tainted, if at all, with criminality.
The case at bar is not to be confused with Fidelity & Deposit Co. v. Queens County Trust Co. (226 N. Y. 225), where defendant bank knew or should have known that the checks of the trustee in bankruptcy required the surety’s countersignature and then failed to make proper inquiry why the countersignature was not affixed to checks cashed for the trustee, thus assisting him in the embezzlement of funds; nor can this case at bar be placed in the same classification as Rochester & Charlotte Turnpike Road Co. v. Paviour (164 N. Y. 281). There an individual debt was paid with a corporate check, thus arousing suspicion and warranting an inquiry; nor does Otten v. Marasco (353 F. 2d 563) bar a recovery. There the pledgor of the bonds told the lender that the bonds were the property of the bakers’ union president, thus requiring the lender to make inquiry as to the pledgor’s authority to make the loan.
The trial court excluded, on plaintiff’s objection, defendant’s offer in evidence of a certified copy of an indictment, bearing No. 3030 for 1967, found against Mr. Ostrer in the Supreme. Court of the State of New York, County of New York, wherein he is charged in two counts. The first count charges the defendant, Louis Ostrer, with the crime of criminally buying and receiving stolen property as a felony, and he is charged therein with having bought and received property of Newburger Loeb & Company having an aggregate value of $20,000, to wit, “ bonds ”. The second count charges Mr. Ostrer with the crime *213 of criminally concealing and withholding the same allegedly stolen property, the property of Newburger Loeb & Company, of the aggregate value of $20,000, to wit, “ bonds
This said document was marked defendant’s Exhibit E for identification.
An examination of this document. shows that the defendant therein, Louis Ostrer, did not at all plead to this indictment; that he moved for the inspection of the Grand Jury minutes, which motion was denied.
Excluded from the evidence, upon plaintiff’s objection, were the minutes of a proceeding in the Supreme Court of the State of New York, County of New York, before Mr. Justice Xavier C. Riccobono. The minutes were marked defendant’s Exhibit F for identification and deal with Mr. Ostrer’s pleading to Indictment No. 3032 of 1967 before said court.
This trial court has read carefully Indictment No. 3030 of 1967 and the minutes of the proceedings before Mr. Justice Riccobono. The “ bonds ”, referred to in this indictment, is not descriptive at all of any of the bonds that came into plaintiff’s possession. Moreover, there is nothing in the record before Mr. Justice Riccoboxo that indicates that the defendant therein, Ostrer, pleaded guilty to any criminal act involving bonds of any description, but that the said defendant pleaded guilty to larceny in the form of 12 checks amounting to $338,370.38, the property of Canada Life Insurance Company. The plea to the first count of Indictment No. 3032 of 1967 was to cover Indictment No. 3030 of 1967. This is not at all an admission of guilt by Ostrer, the defendant therein, of any criminal act with reference to the property of Newburger Loeb & Company, the so-called “ bonds ” referred to in Indictment No. 3030. No larceny, burglary, or criminal act has been proven with respect to the bond that is the subject of this lawsuit, nor has there been a judgment of conviction upon any count in Indictment No. 3030 of 1967 relating to “ bonds,” allegedly the property of Newburger, Loeb & Company. This is no proof at all that the subject bond is “ stolen ”. There was no guilty plea to that indictment; hence there could be no judgment of conviction thereon (People ex rel. Kondrk v. Foster, 299 N. Y. 329, 332), and the defendant could be sentenced only upon the indictment and charge therein that he pleaded to.
This trial court finds that plaintiff is a bona fide purchaser of the subject bond and entitled to possession thereof to the exclusion of all the defendants.
Submit judgment on notice to all parties directing the Property Clerk of the Police Department of the City of New York *214 deliver to and give up possession of the "bond to plaintiff within 10 -days after service of a copy of the judgment upon the said Property Clerk, and in default thereof plaintiff shall be entitled to have judgment against the said Property Clerk for the sum of $5,250 together with appropriate interest from July 3, 1967.