Harold McCLENDON et al., Plaintiffs-Appellants,

v.

Thomas E. ROSETTI, individually and as Police Property Clerk of the City of New York, Defendant-Appellee.

No. 328, Docket 71-1890.

United States Court of Appeals, Second Circuit.

Argued Dec. 6, 1971.

Decided April 12, 1972.

Kalman Finkel, of The Legal Aid Society, New York City (Helaine Barnett, Allan L. Gropper and John E. Kirklin, New York City, of counsel), for plaintiffs-appellants.

Nina G. Goldstein, New York City (J. Lee Rankin and Stanley Buchsbaum, New York City, of counsel), for defendant-appellee.

Before ANDERSON, OAKES and TIMBERS, Circuit Judges.

OAKES, Circuit Judge:

This case was briefed and argued primarily on the question whether there was jurisdiction under the Civil Rights Act, 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983, in view of the fact that plaintiffs-appellants were primarily seeking to protect rights to their property. Since the Supreme Court had noted probable jurisdiction in three cases [1] dealing with the issue and at least one of them, Lynch v. Household Finance Corp., was argued on December 7, 1971, we have withheld decision herein pending word from above. Now that the High Court has held unequivocally that rights in property are basic civil rights within § 1343(3),[2] Lynch v. Household Finance

---

1. *See* Lynch v. Household Fin. Corp., 405 U.S. ——, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972) (Civil Rights Act, 42 U.S.C. § 1983, challenge to prejudgment garnishment statutes) ; Fuentes v. Faircloth, 317 F.Supp. 954 (S.D.Fla.1970), prob. juris. noted, 401 U.S. 906, 91 S.Ct. 893, 27 L.Ed.2d 804 (1971) (similar challenge to prejudgment replevin statute) ; Swarb v. Lennox, 314 F.Supp. 1091 (E.D.Pa.1970), prob. juris. noted, 401 U.S. 991, 91 S.Ct. 1220, 28 L.Ed.2d 529 (1971).

2. *See* Justice Robert H. Jackson in The Task of Maintaining Our Liberties: The Role of the Judiciary, 39 A.B.A.J. 961, 963 (1953) :
It is said, by advocates of the expanding socialization, that it chiefly affects "property rights," as to which it is safe to let the legislators and administrators have their way so long as courts uncompromisingly protect "human rights". For purposes of that argument, it is assumed that our forefathers were absent-minded when the citizen's property, as well as his person, was assured due process of law. The longer I work with these problems the less certain I am that what they joined we can put asunder. My equal right to drive an automobile may be only a claim to use of property, but it concerns my personal freedom as well. Prohibition may be looked upon as no more than a regulation of a particular kind of property, but many took it as rather personal. If officers search my house and seize my papers, with no threat to my person, only property may be directly touched ; but I can think of no greater affront to my person. But, even if we think

Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L. Ed.2d 424 (1972), the issue has been laid finally to rest.[3] We thus pass to the merits of appellants' claims.

Six individual plaintiffs, with two proposed intervenors, here seek to overturn as lacking in due process the New York City ordinance[4] which establishes the office of Police Property Clerk and gives it certain powers, claimed to be arbitrary, over the handling and disposition of property (1) taken from arrested persons or prisoners, (2) suspected of being the proceeds of crime or used unlawfully, (3) required as evidence in any criminal action or proceeding, or (4) which is contraband. The district court dismissed the suit on its own motion for lack of subject matter jurisdiction in reliance upon Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969), cert. denied, 400 U. S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970), which is now no longer applicable in the light of *Lynch*.

Each of the individual plaintiffs except Jean and Thomas Camera had property taken from him at the time of his arrest; the Cameras had a car taken at the time of the arrest of a family member. The property, consisting of autos, cash and sundry items, was delivered to defendant Rosetti, the Police Property Clerk of New York, by the arresting officer or in one case by the Department of Corrections. Criminal proceedings have been terminated in each case either by dismissal or conviction of a crime *unrelated* to the property. The District Attorney has in each case furnished a release certifying that the property is not needed as evidence in any case and that his office has no objection to its return. Each plaintiff has made a timely demand on the defendant for the return of his property but has been advised by defendant's office that a civil suit must be instituted. The defendant makes no claim to ownership of the property—none of which is contraband—and in only one case, that of plaintiff Fisher, is there a third party claimant to the property.

It is conceded that the property of plaintiff Alloggiamento was seized with-

property sometimes has had undue protection against regulation, the question remains, how far so-called rights of property can be swept away without encroaching upon rights of the person as well. Every foreign state that has deprived persons of fundamental "property rights" has eventually also taken away the rights of the person. Those who operate intensive state controls of property have found it necessary soon to take equally intensive state control of labor also.

*Cf.* Truax v. Raich, 239 U.S. 33, 37–38, 36 S.Ct. 7, 9, 60 L.Ed. 131 (1915): "It is also settled that . . . equitable jurisdiction exists to restrain criminal prosecutions under unconstitutional enactments, when the prevention of such prosecutions is essential to the safeguarding of rights of property."

3. *See generally* Note, Another and Hopefully Final Look at the Property-Personal Liberty Distinction of Section 1343(3), 24 Vand.L.Rev. 990 (1971); for a historical discussion of § 1343(3), see Note, The "Property Rights" Exception to Civil Rights Jurisdiction—Confusion Compounded, 43 N.Y.U.L.Rev. 1208 (1968); see also Note, The Proper Scope of the Civil Rights Acts, 66 Harv.L.Rev. 1285, 1289–91 (1953).

4. New York, N. Y., Administrative Code § 435-4.0 (Supp.1971). Although this ordinance has been upheld in the state courts, *see, e. g.*, Hofferman v. Simmons, 290 N.Y. 449, 49 N.E.2d 523 (1943); Williams v. Rosetti, 57 Misc.2d 62, 65, 291 N.Y.S.2d 738 (Civ.Ct.N.Y.County 1968); *cf.* Carr v. Hoy, 2 N.Y.2d 185, 158 N.Y.S.2d 572, 139 N.E.2d 531 (1957), it has been severely criticized: "It seems to me a shocking thing that our police can seize a citizen's property and then when he seeks to get it back challenge him to prove his title to the satisfaction of a jury." Gonzalez v. Leuci, 120 (85) N.Y.L.J., Nov. 1, 1948, at 993, col. 4, quoted by Judge Bryan in United States v. Herzfeld, 271 F.Supp. 185, 189 (S.D. N.Y.1967), and see cases cited therein. The federal government has objected to its constitutionality in suits to enforce tax liens on property held by the property clerk. *See* United States v. Herzfeld, *supra*; *cf.* United States v. Clinton, 260 F.Supp. 84 (S.D.N.Y.1966); United States v. Pagan, 140 F.Supp. 711, 713 (S.D.N.Y.1955).

out probable cause. It is also conceded that plaintiff Flythe was unable to maintain the payments on his car to the finance company because without it his earnings were diminished, and that his inability to make the payments commenced *after* he brought civil proceedings in the New York courts against the defendant.

The City claims in its brief that if a claimant shows proof of ownership and possession after a car has been released by the District Attorney "the Property Clerk will frequently return the automobile" if satisfied that the claimant had no knowledge it was used as a means of or in furtherance of a crime. This, however, did not help plaintiffs Camera whose relative was convicted in September 1970 of the crime—for which he paid a $10 fine—of being an unlicensed driver of the car which the defendant has had in his possession since July 15, 1970, the date on which a police officer allegedly saw a passenger throw a quarter-ounce of marijuana from the car.

Plaintiffs McClendon and Fisher claim that the defendant's refusal to return their property prevented them from posting bail and securing attorneys of their choice, but defendant points out that there was no release of the property as evidence obtained from the District Attorney until after these plaintiffs had served a prison term. The defendant concedes, however, that the proposed intervenors, who are presently incarcerated on felony charges but who have obtained District Attorney's releases with respect to the property they claim, are disqualified from bringing suit against defendant in the state

courts by New York Civil Rights Law § 79 (McKinney Supp. Consol.Laws c. 6 1969). Indeed, proposed intervenor Colligan apparently in October 1963 commenced a suit which was dismissed on that ground, and his appeals have been of no avail.[5] As a matter of law, it is not disputed that the section of the ordinance [§ 435–4.0(c)] giving a magistrate (now called a judge) authority to direct the return of the property is not a meaningful remedy, since almost no criminal court judge (or justice in the criminal term of the New York Supreme Court) will order such return. Proposed intervenor Lowery's effort to obtain such an order was unsuccessful. Nor is it disputed that the defendant ordinarily requests 60 additional days to answer a summons and complaint in the civil courts against him to recover the property and also requests a jury trial, which results in months' delay, with the result that some persons lose their property to finance companies or lose hope and abandon their suits altogether.

Finally, plaintiffs assert that under the ordinance the defendant may dispose of detained property without notice to any claimant and that the proceeds of such disposition are paid into the police pension fund. On argument, however, defendant stated that these payments do not increase the size of the pension fund but merely reduce the City's contribution to it.[6]

On the merits of the issue of due process, the City has not briefed, and has not seriously urged before us, the argument that the ordinance meets minimal due process requirements. It could hardly do so on the record, with all par-

5. *See* Colligan v. Rosetti, 384 U.S. 993, 86 S.Ct. 1903, 16 L.Ed.2d 1009 (1966) (denial of writ of certiorari to the Court of Appeals for the Second Circuit, following denial of application for a certificate of probable cause and for leave to proceed *in forma pauperis*) ; Colligan v. New York, 379 U.S. 860, 85 S.Ct. 119, 13 L.Ed.2d 63 (1964) (denial of writ of certiorari to New York Court of Appeals).

6. Reduction of the payments that must be made by the City into the fund nevertheless may benefit the police; for example, the City, hard-pressed for funds for numerous purposes other than for the police, may not be required to reduce police pay in order to meet the pension fund demands.

ties (and intervenors) deprived of the use of their property, some without any notice whatsoever (plaintiff Oliver and proposed intervenor Colligan, whose property was disposed of while he was awaiting trial on the charges for which he was arrested) and without any meaningful requirement of notice in the ordinance.[7]

■ Beyond the question of notice, however, the ordinance is fatally deficient in other terms of due process. The burden of proof in any civil action is expressly put upon the claimant "from whose possession such property or money was taken or obtained, or any other claimant" to "establish that he has a lawful title or property right in such property or money and lawfully obtained possession thereof and that such property or money was held and used in a lawful manner." New York, N.Y. Administrative Code § 435–4.0(f) (Supp.1971). As the section has been construed by the New York courts, the burden exists even if there is insufficient evidence for an indictment. Angrisani v. Rosetti, 36 Misc.2d 523, 233 N.Y.S.2d 351 (Civ.Ct., Bronx County 1962). It exists even after acquittal or dismissal. Weiss v. Rosetti, 23 A.D.2d 655, 257 N.Y.S.2d 519 (1st Dept. 1965); Rivera v. Rosetti, 38 Misc.2d 1030, 239 N.Y.S.2d 691 (Civ. Ct., N.Y.County 1963); Roxy Athletic Club, Inc. v. Simmons, 80 N.Y.S.2d 277 (App.Term, 1st Dept. 1944), reversing 44 N.Y.S.2d 47 (City Ct., N.Y.County 1943). It seems plain enough that absent evidence of unlawful conduct, criminal sanctions may not be imposed, Tay-

lor v. Louisiana, 370 U.S. 154, 82 S.Ct. 1188, 8 L.Ed.2d 395 (1962); Thompson v. Louisville, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960), nor property forfeited, United States v. One 1936 Model Ford etc. Coach, 307 U.S. 219, 59 S.Ct. 861, 83 L.Ed. 1249 (1939), even though in the case of property forfeiture the burden of proof on the government seeking it is only by a preponderance of the evidence. Utley Wholesale Co. v. United States, 308 F.2d 157, 159 (5th Cir. 1962); D'Agostino v. United States, 261 F.2d 154, 157 (9th Cir. 1958), cert. denied, 359 U.S. 953, 79 S.Ct. 739, 3 L.Ed. 2d 760 (1959).

Consequently we are dealing here with procedures of "an importance fully as great as the validity of the substantive rule of law to be applied," see Speiser v. Randall, 357 U.S. 513, 520–521, 78 S.Ct. 1332, 1339, 2 L.Ed.2d 1460 (1958)—a rule of procedure that affects—or here in fact, infects—the substantive outcome. Cf. Note, The Growth of Procedural Due Process into a New Substance: An Expanding Protection for Personal Liberty and a "Specialized Type of Property . . . in Our Economic System," 66 Nw.U.L.Rev. 502 (1971); see also Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). The defendant's own brief, in describing the operation of the ordinance, indicates the substantial degree of governmental arbitrariness which property owners must confront and suggests *per se* a lack of due process:

   *As a matter of practice,* a registered owner, other than a defendant,

---

7. Section 435–4.0(e) (1) of the Administrative Code is the only section requiring notice and that is of an auction sale of property other than money for which there is no "lawful claimant." Apparently the auction sale notices merely list the general character of the property for sale.

   Regarding the requirement of notice, *see generally* Lambert v. California, 355 U.S.

225, 228, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957); Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 309, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950); Lasere v. Rochereau, 84 U.S. (17 Wall.) 437, 438–439, 21 L.Ed. 694 (1873); The Palmyra, 25 U.S. (12 Wheat.) 1, 13, 6 L.Ed. 531 (1827).

of a car seized in connection with an arrest fills out a form provided by the Property Clerk (A219–A220). If the claimant shows proof of ownership and lawful possession, and the District Attorney has released the car as evidence, the Property Clerk will *frequently* return the automobile if he is satisfied that the claimant had no knowledge it was used as a means of or in furtherance of crime (A220) (emphasis supplied).

Not unexpectedly, the challenged procedures of the Police Property Clerk, resting as they do on the sections of the Code fixing the burden of proof, have been condemned by some of the state courts as involving "insolence of office," Marshall v. Kennedy, 17 Misc.2d 985, 988, 181 N.Y.S.2d 413 (Sup.Ct.1959); as being "shocking," Gonzalez v. Leuci, note 4 *supra;* and, more moderately, as involving "a studied indifference to the rights of the public." Country-Wide Insurance Co. v. Rosetti, N.Y.L.J., July 17, 1970, at 8, col. 6 (Civ.Ct., N.Y. City 1970). We concur.

▪ Thus we hold § 435–4.0 of the New York City Administrative Code unconstitutional as applied to persons from whose possession money or property, other than contraband, has been taken or obtained, though such money or property was not related to any criminal proceeding, or, if it was so related, such criminal proceedings had been terminated, or if the money or property had been needed as evidence in a criminal proceeding, it was no longer needed for that purpose, as violative of the due process clauses of the fifth and fourteenth amendments. We remand to the court below, with direction to permit intervention and to establish an appropriate class, for a determination of the respective rights of the parties in accordance herewith and for the purposes of formulating any necessary injunctive relief to avoid further perpetuation of the practices and procedures hereby declared unconstitutional.