Peauk Del Vecchio, J.
This is a motion by the plaintiff in the three above-entitled actions for an order suppressing and excluding upon the trial any evidence obtained by means of an autopsy alleged to have been unlawfully performed upon the body of plaintiff’s deceased husband in violation of section 2214 of the Penal Law. That section, designed to prevent unlawful dissection of the body of a human being, provides: ‘ ‘ A person who makes, or causes or procures to be made, any dissection of the body of a human being, except by authority of law, or in pursuance of a permission given by the deceased, is guilty of a misdemeanor.”
The facts which give rise to the motion are as follows: On August 20,1960 at about 5:30 p.m. while plaintiff’s husband was operating a motor vehicle in the City of Utica with his wife and her mother as passengers, the vehicle struck a parked car, he then lost control of it and went over the curb, struck a telephone pole and proceeded on to strike head-on another car which was parked on the opposite side of the street. Police were called to investigate at the scene and the driver was removed by ambulance to a hospital where he was pronounced dead upon arrival. There is no claim that decedent was medically attended when death occurred.
The following day the Oneida County Coroner directed a pathologist to perform an autopsy on the deceased, without having asked plaintiff for her permission or consent. Based on the autopsy report, a death certificate signed by the coroner was duly filed, stating as the cause of death: (1) Acute pulmonary edema, (2) Acute coronary heart disease, (3) Chronic coronary artery sclerosis.
The above defendants paid plaintiff, the named beneficiary, a total of $12,500, the face value of the insurance policies issued by them on the life of the deceased. Each defendant refused to pay additional benefits under the double indemnity provisions of the policies, on the ground that death was not caused directly and independently of all other causes through accidental means, or as a result solely and exclusively of accidental means and without disease contributing thereto.
These actions were brought to recover the amounts claimed to be due under the double indemnity provisions, plaintiff *313 alleging that her husband’s death occurred as the result of injuries received in the accident described above.
The group policy issued by the defendant The Travelers Insurance Company provides that the company shall have the right and opportunity to make an autopsy where it is not forbidden by law. The policies issued by the other two defendants do not contain any provision relative to an autopsy.
Plaintiff claims that the post-mortem examination was unauthorized and constituted an unreasonable search and seizure, depriving her of property without due process of law, and that the evidence obtained thereby and any public records made upon the basis thereof are therefore inadmissible in evidence upon the trial of these actions.
Defendants, on the other hand, take the position that, assuming the autopsy was unlawfully performed, plaintiff’s only remedy would be a cause of action for damages against those responsible for it (Darcy v. Presbyterian Hosp., 202 N. Y. 259); that the results of such an examination, even though illegally obtained, would be admissible on the trial of these actions upon the authority of Bloodgood v. Lynch (293 N. Y. 308) and Sackler v. Sackler (16 A D 2d 423). In the Bloodgood case (a civil action) the court held that section 270-b of the Penal Law did not apply to a police officer and that it was therefore not unlawful for him to obtain in a hospital after an accident the statement offered in evidence, but by way of dictum said that, even if the statement had been illegally obtained, it would not be incompetent or inadmissible in evidence. In the Sadder case the Second Department, in a 3 to 2 decision, held that the new rule excluding in criminal cases evidence illegally obtained does not apply (a) to evidence gathered by private persons or (b) to civil actions. Defendants also claim that the coroner’s decision represents a judicial determination which cannot be collaterally attacked since the findings are a public record which, by statute, is admissible in evidence. (Civ. Prac. Act, §§ 367, 374-a.)
Plaintiff recognizes that the question of admissibility of illegally obtained evidence in a civil action has not been passed upon by the Court of Appeals or the Appellate Division of the Fourth Department since the decisions of Mapp v. Ohio (369 U. S. 643) and People v. Loria (10 N Y 2d 368) criminal cases in which it was held that evidence so obtained is inadmissible on trial. She claims however that the rule of inadmissibility laid down in these cases applies to both criminal and civil litigation, that the dictum in the Bloodgood ease has been overruled by Mapp and Loria, and that the dissenting opinions in the Sadder case are more logical and persuasive in asserting *314 that exclusionary rules concerning illegally obtained evidence should apply equally in civil as well as in criminal cases.
Prior to Mapp v. Ohio (supra), illegally obtained evidence was admissible in criminal as well as in civil cases in New York State (People v. Richter’s Jewelers, 291 N. Y. 161; People v. Defore, 242 N. Y. 13; Bloodgood v. Lynch, supra) contrary to the long-established Federal rule. (Weeks v. United States, 232 U. S. 383.) It might be noted that Bloodgood (which laid down the rule as to civil actions) was based upon Before (a criminal case), the effect of which has been destroyed by Mapp and Loria.
In Mapp v. Ohio (supra, p. 655) the court said: “ We hold that all evidence obtained by searches and seizures in violation of the Constitution is, by the same authority, inadmissible in a state court ’ ’.
In People v. Loria (supra, p. 370) the Court of Appeals said that the United States Supreme Court had held in Mapp “ that evidence obtained by search and seizure in violation of the Fourth Amendment, made applicable to the States through the due process clause of the Fourteenth, is inadmissible in a State court. There can be no doubt that it is the duty of State courts to follow the Mapp holding in all trials taking place after June 19,1961.” (Emphasis supplied.) It is significant that the court did not insert the word ‘ ‘ criminal ’ ’ before 1 ‘ trials ’
Many States have held that evidence illegally obtained is inadmissible not only in criminal trials but also in civil actions. (See Lebel v. Swincicki, 354 Mich. 427; Hartman v. Hartman, 253 Wis. 389; People v. Frangakis, 184 Cal. App. 2d 540; Hair v. McGuire, 188 Cal. App. 2d 348.)
This court is of the opinion that there is merit to plaintiff’s position concerning the effect of Mapp and Loria on the Blood-good dicta. The language of the Court of Appeals enjoining State courts to follow Mapp “ in all trials” is unequivocal. Furthermore, it would seem that there is no valid basis for different rules of admissibility of illegally obtained evidence in criminal and civil litigation; evidence obtained by search and seizure in violation of the Constitution should be excluded in both types .of actions.
However, it is not necessary to pass upon the question which has been discussed above on the present motion, for the court is satisfied that the autopsy report challenged by plaintiff was not obtained by unlawful search or seizure and that the public records of findings obtained from the autopsy performed by a pathologist at .the direction of the coroner under the circumstances present in these cases are admissible in evidence upon the trial of the actions.
*315 Plaintiff points to section 4210 of the Public Health Law and section 773 of the Code of Criminal Procedure and asserts that, in view of these sections, a coroner is authorized to perform or direct an autopsy only when he has been informed that a person has been killed by another or has suddenly died under such circumstances as to afford a reasonable ground to suspect that his death has been occasioned by the act of another by criminal means, or has committed suicide. Since her husband’s death falls within none of these categories, she asserts that the coroner was without power to direct the post-mortem examination.
The court is not satisfied however that the coroner’s authority is so limited. (See 13 N. Y. Jur., Counties, § 100.) Certain it is that he may direct an autopsy when circumstances are as described in these sections. Other sections of the laws of this State, not mentioned by plaintiff or defendants, make it clear that, at least by implication, the Legislature has empowered him, in other circumstances also, to perform his general duty to ‘ ‘ make inquiry into unnatural deaths within his county ’ ’ (County Law, § 662) and as an incident thereto to direct postmortem examinations.
Section 603 (formerly § 75) of the Vehicle and Traffic Law requires the coroner to make a report to the Commissioner of Motor Vehicles with respect to all deaths found to have been the result of motor vehicle or motorcycle accidents. In view of the circumstances surrounding decedent’s death, this section might well be relevant to such death.
Subdivision 2 of section 4143 of the Public Health Law provides that when death occurs without medical attendance the local health officer shall investigate and certify as to the cause of death and in certain circumstances (which are different from those set forth in section 4210 of the Public Health Law and section 773 of the Code of Criminal Procedure) shall refer the case to the coroner for the latter’s investigation and certification. By subdivision 3 of section 4143 the coroner is thereupon charged with the responsibility of stating on the certificate of death the ‘ ‘ name of the disease causing death, or if from external causes, the means of death ”.
Subdivision 2 of section 4144 of the Public Health Law provides that no burial permit shall be issued by the registrar of vital statistics until a complete and satisfactory certificate of death has been filed with him. When no physician was in attendance on the deceased, such certificate must be issued either by the local health officer or by the coroner, as provided in section 4143, and must certify as to the cause of death.
*316 The sections of the Vehicle and Traffic Law and of the Public Health Law discussed above charge the coroner with a duty of making a determination as to the cause of death and of reporting or certifying the same, without expressly granting him the power to perform an autopsy in these circumstances. It is inconceivable to this court however that the Legislature would impose a duty to make such a technical and scientific determination — ■ many times impossible without a post-mortem examination — • without by implication conferring the authority to perform the necessary analytical procedure to make such determination.
Section 778-a of the Code of Criminal Procedure cited by plaintiff, merely refers to the right of a representative of the deceased to be present at an autopsy. It does not require the person performing the same to notify such representative nor does it affect the validity of the examination.
Plaintiff relies chiefly on section 2214 of the Penal Law as prohibiting the autopsy here performed. That section however only prohibits such procedures which are not carried on “by authority of law ’ ’ or which are not ‘ ‘ in pursuance of a permission given by the deceased ’ ’. This court is of the opinion that the section referred to does not apply to a coroner acting in the performance of his official duty, anymore than section 270-b of the Penal Law prohibiting the taking of statements in a hospital applied to a police officer in the Bloodgood case. In any event, as indicated above, the court is satisfied that the autopsy in question was performed “by authority of law ” so as to be removed from the bar of section 2214 of the Penal Law, and that it was also carried out with the permission given by the deceased, a second basis for its exclusion from the prohibition of the Penal Law section.
It should be recalled that the policy of insurance issued by The Travelers Insurance Company specifically authorized the performance of an autopsy on the body of the insured. This requirement is a condition precedent to recovery on the policy and the deceased, by entering into the contract of insurance, thereby gave his consent to a post-mortem examination. In this circumstance, it cannot be said that the autopsy was unauthorized; on the contrary, the procedure was expressly authorized by the deceased. Had not the coroner decided to perform the examination, the insurance company itself could have requested it. Once the coroner had acted however, and had made an official record of the findings of the autopsy, there was of course no purpose to be served by the company’s pursuing a second autopsy. It was entitled to rely upon the act of the coroner — ■ over whom neither party had control — and to accept his report *317 in lieu of the examination to which it was entitled by the terms of the policy under which plaintiff now seeks to recover. A public official is presumed to act honestly and in accordance with law and to do nothing contrary to official duty nor .omit anything which official duty requires to be done. (Matter of Marcellus, 165 N. Y. 70; Matter of Whitman, 225 N. Y. 1.) Furthermore, there can be no doubt that an official autopsy report duly filed as a public record is admissible in evidence. (People v. Nisonoff, 293 N. Y. 597; Iovino v. Green Bus Lines, Inc., 277 App. Div. 1002.)
Since the court has determined as a matter of law that the autopsy was not unauthorized, no hearing is required for a determination of the motion. For the reasons given above, the motion to suppress is denied.