JAMES PROVENZO, Respondent, *v.* NANCY D. SAM et al., Appellants.

Fourth Department, May 23, 1967.

*Charles J. Hannum* and *Anthony J. Spann* for respondent.

*Johnson, Peterson, Tener & Anderson* (*William C. Arrison* of counsel), for Nancy D. Sam, appellant.

*Blood & Meeder* (*William R. Blood* of counsel), for Ruth Martenson, appellant.

*Per Curiam.* Plaintiff has received a substantial monetary award from a jury against both defendants. The proof established that he was operating his vehicle behind one driven by the defendant Martenson. The car of the latter swerved back and forth, struck a parked car, crossed the street, struck a house and stopped. This defendant, Martenson, previously had had at least three drinks and subsequently plead guilty to a charge of driving a vehicle while her ability to do so was impaired by the consumption of alcohol.

Plaintiff stopped his car and, according to his version, saw "this car coming with lights on quite a distance, and I run across the street." The car he saw approaching was that of defendant Sam. Plaintiff in dashing across the street in front of that vehicle was struck and injured. There is no proof that defendant Martenson was in any imminent danger from fire, electric wires, or anything else which might cause injury either to her or her vehicle.

In passing, we view as highly prejudicial the twice repeated statements of plaintiff — received over objections — that he remarked to his wife that Mrs. Martenson must be sick or must have had a heart attack. At this stage of the incident plaintiff was only a bystander expressing his speculations as to what might have happened. To qualify as a spontaneous exclamation admissible as *res gestæ* under the exception to the hearsay rule the declarant must have been an actor or participant in the occurrence and not merely a spectator. (21 N. Y. Jur., Evidence, § 347, p. 482.)

The complaint herein contained allegations which in substance set forth that the acts of defendant Martenson created a situation requiring immediate rescue by plaintiff. At the close of plaintiff's proof defendant Martenson moved to dismiss on the ground that plaintiff was contributorily negligent and that such

negligence upon the facts presented did not become excusable under the so-called rescue doctrine. The motion was denied and the case subsequently was submitted to the jury as to both defendants upon a charge that permitted the jury to ignore the issue of contributory negligence if it found that plaintiff "acted in an emergency situation to rescue Mrs. Martenson."

We conclude that the motion of appellant Martenson to dismiss at the end of plaintiff's case should have been granted. It follows that the inclusion of the rescue doctrine in the charge as to appellant Sam was reversible error. In this posture of the case it was error to deny the motion of appellant Sam to set aside the verdict. This motion should have been granted because of the erroneous instructions and also on the ground the verdict was contrary to the evidence. In other words, upon the elimination of the rescue doctrine from the case, a finding that plaintiff **was free from** contributory negligence could not stand.

We recognize the general rule that " one who sees a person in imminent and serious peril through the negligence of another cannot be charged with contributory negligence, as a matter of law, in risking his own life, or serious injury, in attempting to effect a rescue, provided the attempt is not rashly or recklessly made." (41 N. Y. Jur., Negligence, § 63.) This latter proviso has been elaborated upon in the following language: " It requires more than a suspicion that an accident might happen to justify one to incur obvious danger on the theory that human life or limb is in imminent peril. The rule under consideration is inapplicable where no one is in imminent danger, and the circumstances afford no reasonable basis for believing otherwise." (65A C. J. S., Negligence, § 124, p. 85.) Moreover, the doctrine will not be invoked where, as here, the threat of peril is merely imaginary and speculative. (*Eversole* v. *Wabash R.R. Co.*, 249 Mo. 523; 38 Am. Jur., Negligence, § 228, p. 913; Ann. 19 A. L. R. 4, 10; Ann. 158 A. L. R. 189, 193.)

It is recognized that danger invites rescue, but here we find no proof upon which it could be found that a reasonable person could conclude that defendant Martenson was in any imminent or serious peril. Her vehicle had come to rest. There is no evidence that plaintiff by training or experience was in a position to render first aid to an injured person. The difference between a safe crossing of the highway and plaintiff's pricipitous flight would have been a matter of a few seconds or moments. The circumstances afforded no reasonable basis for plaintiff's belief that his presence was immediately required at the side of a stalled automobile. The implementation of the rescue doctrine as to the defendant Sam, with the concomi-

tant freeing of plaintiff from contributory negligence, places an oppressive burden on a motorist proceeding on a highway without knowledge that an accident has happened and that a would-be rescuer is about to run in front of the passing vehicle.

Ordinarily, whether negligence is to be imputed to a plaintiff in making a rescue is a jury question (*Carney* v. *Buyea,* 271 App. Div. 338, 342) but here we conclude that by no rational process upon the evidence presented could the jury have based a finding in favor of plaintiff on the rescue doctrine. In such event the issue is for the court. (*Blum* v. *Fresh Grown Preserve Corp.,* 292 N. Y. 241.)

Lastly, the court erred in receiving proof that the sample of plaintiff's blood taken shortly after the accident contained an alcohol content of .225 per cent by weight. Inapplicable in this civil action, of course, is the provision of section 1192 of Vehicle and Traffic Law that makes proof that a person has .150 per cent, or more by weight of alcohol in his blood prima facie evidence of intoxication. The fact, however, that plaintiff had approximately 1½ times that percentage of alcohol in his blood is an intriguing piece of evidence as to plaintiff's condition and motivation in dashing to the assistance of one apparently not in need of immediate rescue. The blood sample, however, was obtained without plaintiff's express permission and the proof should not be received on another trial.

The judgment should be reversed and the complaint dismissed as to defendant Martenson, without costs, and a new trial granted as to defendant Sam, with costs to this appellant to abide the event.

GOLDMAN, J. (dissenting). Plaintiff was severely injured under the circumstances which invoked the rescue doctrine against defendant Martenson and ordinary negligence against defendant Sam. The majority rejects the rescue doctrine on the ground that the threat of peril was "merely imaginary and speculative" and has ordered a new trial as to defendant Sam on the ground that the verdict against her is against the weight of the evidence.

Plaintiff was driving his pickup truck, in which his wife was a passenger, in a westerly direction, when he observed the Martenson automobile, which was traveling in front of him, swaying back and forth across the road. Plaintiff and other witnesses saw it hit a snow bank, cross back to the highway, continue to zigzag from side to side, strike a parked car, swerve left across the road and finally come to rest a city block beyond on the front lawn of a house it struck on the opposite side of

the road with the driver " slumped over the steering wheel ". Plaintiff remarked to his wife, as they watched this erratic course of the defendant Martenson car, that " This person must be sick, must have a heart attack ". Plaintiff immediately stopped his vehicle on the north side of the highway, waited a few moments for a truck to pass, looked in front of him to the west, saw lights of a car traveling easterly " quite a distance " away and ran across the street to assist the driver of the Martenson car. Defendant Sam testified that visibility was good but she did not observe plaintiff until he was about 40 feet in front of her car at which time he was about eight feet from the south curb. Plaintiff had almost crossed the road when he was struck by the right fender of defendant Sam's car. His head was two or three feet from the south curb after he was hit.

Defendant Martenson testified that she had three drinks of alcoholic beverage prior to the accident, that she was rendered unconscious when she struck the parked car and remembered nothing else until she regained consciousness after her automobile came to rest on the lawn of the house. She was charged with driving while impaired and plead guilty to the charge. Plaintiff contends that defendant Martenson's negligence placed her in a situation where in his judgment rescue was demanded, that his own rescue attempt was not rash and that defendant Martenson's negligence was a proximate cause of his injuries.

The rescue doctrine was early recognized in this State in *Eckert* v. *Long Island R.R. Co.* (43 N. Y. 502). That case laid down the principle that rescue is foreseeable in a perilous situation and that the negligent person is liable to the rescuer. In *Eckert* we find the frequently cited statement concerning the standard of conduct of a rescuer as to contributory negligence in the following language (p. 506): " The law has so high a regard for human life that it will not impute negligence to an effort to preserve it, unless made under such circumstances as to constitute rashness in the judgment of prudent persons." This doctrine was followed in *Gibney* v. *State of New York* (137 N. Y. 1); *Miller* v. *Union Ry. Co.* (191 N. Y. 77, 80) and became settled law in the landmark decision in *Wagner* v. *International Ry. Co.* (232 N. Y. 176). The obligation of the negligent party is summed up with great clarity in the language of Judge Cardozo (p. 180): " Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes them as normal. It places their effects within the

range of the natural and probable   *   *   *   The risk of rescue, if only it be not wanton, is born of the occasion.''

The issue of ''whether plaintiff in going to the rescue, as he did, was foolhardy or reasonable in the light of the emergency confronting him, were questions for the jury '' (*Wagner* v. *International Ry. Co., supra,* p. 182). This court in *Carney* v. *Buyea* (271 App. Div. 338, 342) clearly asserted the principle to be followed here, that the determination of defendant Martenson's negligence, its relation to proximate cause, and whether plaintiff's actions were foolhardy or reasonable, were issues for jury resolution. The applicability of the rescue doctrine depends upon the peculiar facts of each case. Whether the act of rescue was reasonable under all the circumstances in the emergency created by defendant Martenson, and reasonably commensurate with the risk incurred in the rescue, are questions of fact which the jury in the case at bar found in plaintiff's favor. The trial court properly charged that the question for the jury was whether the defendant Martenson's negligence created a situation which ''would cause the ordinary prudent person under the same circumstances to believe that she was in some actual danger or in the need of immediate assistance ''. Surely an unconscious woman at the wheel of an automobile which strikes another automobile and continues back and forth across the highway and ends up on a lawn next to a house demonstrates peril; also there was the apprehended danger of fire and explosion following the automobile's collision with the house.

Furthermore, impassionate objectivity is not required of the rescuer (65A C. J. S., Negligence, §§ 122–124). I would not limit the rescue doctrine to instances of actual peril, and deny its benefits to one who acts on appearances which would lead a reasonable person to believe that rescue was necessary, simply because it subsequently turns out that circumstances were not as they seemed and danger in fact was nonexistent. The rescuer is entitled to act as a reasonably prudent person under the circumstances as they are presented to him. One who comes forward to lend aid, on the basis of appearances which give him the reasonable impression of imminent danger, should not act at his own peril. No decision in this jurisdiction so requires and other jurisdictions have held the rescue doctrine applicable when danger is apparent though unreal (*Cote* v. *Palmer,* 127 Conn. 321; *Highland* v. *Wilsonian Inv. Co.,* 171 Wash. 34). (For a good discussion of cases decided under the rescue doctrine, see Ann. 158 A. L. R. 189 and Ann. 4 ALR 3d, pp. 558–564.)

I cannot concur with the majority view that the verdict against defendant Sam is against the weight of the evidence. She testified that visibility was good and she was traveling but 30 miles per hour when she saw plaintiff about 40 feet away. She did not sound her horn, and although she said she applied her brakes, she hit plaintiff, when he had nearly reached the curb, with such force that he was tossed into the air and onto the hood of her car. Plaintiff was confined to the hospital for about 10 weeks and received serious permanent injuries. The charge of the court as to contributory negligence did not clearly distinguish the difference between the duty owed by plaintiff to defendant Sam and the duty owed to defendant Martenson. As to the latter, the rescue doctrine would require only that plaintiff be not guilty of rash or reckless conduct, in the judgment of ordinarily prudent persons. As between plaintiff and defendant Sam, the basic and ordinary rules of negligence apply. However, neither of the defendants took a single exception to the charge or made any request to enlarge or refine it. That the defendants were satisfied with the charge is clear from their failure to raise any question about it on this appeal. Thus, the question of defendant Sam's negligence properly became a matter for the jury and I would not disturb its determination. We should not set aside the jury's verdict and order a new trial unless there is an " ' overwhelming preponderance ' " of evidence against it, so great that a jury could not have reached the verdict on " ' any fair interpretation of the evidence ' " (*Rapant* v. *Ogsbury,* 279 App. Div. 298, 300).

I agree with the majority's statement as to the plaintiff's spontaneous exclamation that there is some authority for the view " that the declarant must have been an actor or participant in the occurrence in order to render his declaration admissible as res gestae under an exception to the hearsay rule " (21 N. Y. Jur., Evidence, § 347, p. 482). Certainly no one was more of an " actor or participant " in this rescue act than the plaintiff. In the final analysis the test is whether the rescuer acted as a reasonably prudent person under all the circumstances and the jury, as the judges of this fact question, determined that he did so act.

It should be noted that the introduction of evidence of the alcoholic content found in plaintiff's blood analysis which was taken solely for use in administering transfusions to plaintiff, was improper and highly prejudicial. Plaintiff was a pedestrian when struck and the only question is how he conducted himself as he ran across the street.

No claim is made that the verdict is excessive, and I would affirm the judgment as against both defendants.

WILLIAMS, P. J., BASTOW and HENRY, JJ., concur in *Per Curiam* opinion; GOLDMAN, J., dissents and votes to affirm the judgment as to both defendants in an opinion in which DEL VECCHIO, J., concurs.

Judgment reversed on the law and facts, complaint dismissed without costs as to defendant Martenson, and a new trial granted as to defendant Sam, with costs to this appellant to abide the event.