William Mebtens, J.
In this action for malicious prosecution, the parties have requested the court to make preliminary rulings before the selection of the jury so that they might be guided in impaneling the jury. It is proper that the issues in question be determined in advance of the jury selection.
In substance, the first question deals with the issue of just cause for the criminal prosecution out of which this civil litigation arises. The plaintiff contends that prior determinations in the Criminal Court of the City of New York adverse to the city’s position in this case collaterally estop the City of New York from relitigating the issues determined by Judge Kleiman (see People v. Irizarry, 64 Misc 2d 49) in the criminal proceeding. The defendant City of New York contends that the doctrine of collateral estoppel does n.ot apply in this civil action, because it was not a formal party to the criminal proceeding, and thus that it may try de novo in this court the very same issues which were litigated in the criminal court, namely, the determination of the invalidity of the search warrant; the determination of the illegality of the evidence obtained on the basis of that search warrant; and the determination of an absence of just cause for the prosecution. The second question posed by the defendant in this case is whether evidence illegally obtained may nevertheless be admissible in this civil litigation.
The parties have not presented to the court and the court’s own research has not revealed any case specifically dealing with the application of the principle of collateral estoppel ¡based upon a determination made by the Criminal Court of the City of New York in a subsequent civil action for malicious prosecution brought by the accused against the City of New York whose police officers brought about the criminal prosecution. The court finds, however, that the Court of Appeals in recent cases has established clear guidelines for the application of the doctrine of collateral estoppel (Commissioners of State Ins. Fund v. Low, 3 N Y 2d 590; Schwartz v. Public Administrator, 24 N Y 2d 65; Vavolizza v. Krieger, 33 N Y 2d 351). In Commissioners of State Ins. Fund v. Low (supra, p. 595) Judge Desmond *348 pointed out the distinction between the principles of res judicata and of collateral estoppel and stated the predicates for the application of the doctrine of collateral estoppel in the following language: “ Strictly speaking, the defense here is not res judicata but collateral estoppel. That doctrine is elusive and difficult to apply case by case but it is essentially a rule of justice and fairness. It involves not one but two rules of public policy. The first is that a question once tried out should not be relitigated between the same parties or their privies. The other public policy involved in collateral estoppel and res judicata, however, is that these doctrines must not 'be allowed to operate to deprive a party of an actual opportunity to be heard (see General Aniline & Film Corp. v. Bayer Co., 305 N. Y. 479, 483; Matter of New York State Labor Relations Bd. v. Holland Laundry, 294 N. Y. 480, 493, et seq.; Polasky, Collateral Estoppel — Effects of Prior Litigation, 39 Iowa L. Rev. 217, 218).”
In the subsequent case of Schwarts v. Public Administrator (supra) the Court of Appeals reversed Glaser v. Huette (232 App. Div. 119, affd. 256 N. Y. 686) and held that a determination in favor of a passenger in an action against two drivers gave rise to collateral estoppel to prevent the relitigation of the issue of negligence between the two drivers in a new action brought by the one driver against the other.
In the majority opinion for the court, Judge Keating stated (pp. 69, 70 and 71): “ Glasser has been replaced by the sound principle that, where it can be fairly said that a party has had a full opportunity to litigate a particular issue, he cannot reasonably demand a second one. * * * We have * * * already discarded, as irrelevant to a proper consideration of the issues in this area, the fact that there may or may not have been any significant jural relationship between the party seeking to invoke the doctrine and the prior victor. * * * New York Law has now reached the point where there are but two necessary requirements for the invocation of the doctrine of collateral estoppel. There must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and, second, there must have been a full and fair opportunity to contest the decision now said to be controlling.”
These recent decisions in New York are in accord with the general principles expressed in the Restatement of Judgments (■§ 83). The Restatement defines privity as a word which expresses the idea that as to certain matters and in certain circumstances persons who are not parties to an action, but who are *349 connected with it in their interests are affected by the judgment with reference to interests involved in the action as if they were parties. The word “ privy ” includes those who control an action although not parties to it; those whose interests are represented by a party to the action; and successors in interest to those having derivative claims.
Applying these principles to the case at bar, it seems clear that while the State and the city are distinct legal entities, their interests in the criminal prosecution made one privy to the other. There is an identity of interest and issues in both the criminal action and the civil action. The defendant in this case, through the State, had a full and fair opportunity to litigate those issues in the criminal proceeding. This case is to be distinguished from People v. Lo Cicero (17 A D 2d 31). In the Lo Cicero case, the claimed privity of interest between the Federal Government and the State government was rejected and the court held that the jural identities of the Federal Government and the State government as separate prosecuting bodies was such as to prevent the application in a State prosecution of the principle of collateral estoppel based on an earlier determination in the Federal court. In the instant case, there is a clear identity of interest between the defendant City of New York in the civil case and the People of the State of New York in whose name the criminal prosecution had been instituted. The fact is that the city has no capacity to institute criminal prosecution in its own name even though its enforcement officers, namely, the city police, bring about the institution of criminal proceedings in enforcement of State penal laws. While the technical prosecutor in a criminal proceeding is “ The People of the State of New York ”, its interest is identical with that of the City of New York in enforcing the criminal laws within the City of New York. The city had knowledge and control of the facts supporting the basic issues involved in the criminal proceeding. It was the city’s officers who furnished the testimony upon which the prosecution was based. Certain issues presented in the criminal proceeding and in the instant civil case are identical, namely, whether the search warrant was invalid; whether the evidence was illegally obtained and whether there was just cause for the prosecution. It is thus clear that we have before us the two basic predicates required by the above cited Court of Appeals decisions, namely, identity of issue and a full and fair opportunity to contest the issue.
In the criminal prosecution Judge Kleimau specifically held that the statements of the police officer in the affidavit upon *350 which the search warrant was obtained “ wére false, to the knowledge of the affiant in 'a material respect ” and he accordingly vacated the search warrant and further held that the evidence obtained on the basis of that search warrant was illegally obtained. Judge Kleiman further held that on the entire evidence presented there was no probable cause for making the arrest. Those issues having been determined adversely to the city in the criminal prosecution, there is now no valid public interest to be served by permitting the city to relitigate in this civil case those very issues which have been decided adversely to it in the criminal proceeding initiated by its own agents. This court holds that the principle of collateral estoppel applies in this case and the city as defendant in this civil litigation is bound by such prior determinations in the criminal proceedings.
The remaining question is whether the evidence determined in the criminal proceeding to have been illegally obtained as a result of the illegal search and seizure may nevertheless be admissible in this civil action.
The defendant, city, contends that illegally obtained evidence may be admitted in this proceeding. The city relies upon Terpstra v. Niagara Fire Ins. Co. (26 N Y 2d 70) where a voluntary confession was admitted in a civil proceeding although defendant had not been advised of his Escobedo rights. (Escobedo v. Illinois, 378 U. S. 478.) The court clearly distinguished between that situation 'and one where evidence was obtained by illegal search and seizure. The city also relies on Sackler v. Sackler (16 A D 2d 423, affd. 15 N Y 2d 40) which involved an illegal search and seizure performed by private persons rather than government officials. The lower court held that illegal evidence obtained by private persons was admissible in a civil proceeding. The lower court cited Bloodgood v. Lynch (293 N. Y. 308) which had been decided prior to Mapp v. Ohio (367 U. S. 643). In affirming the lower court’s decision, the Court of Appeals in the Sadder case (by Chief Judge Desmond) stated (p. 44): “ For further clarity, it should be noted that the question we are discussing is not as to whether evidence invalidly gotten by governmental people may be used in a civil litigation (see Bloodgood v. Lynch, 293 N. Y. 308; Cleary v. Bolger, 371 U. S. 392) or whether evidence wrongfully obtained by private individuals may be used by the State in a criminal prosecution. The only question here is whether evidence gotten by persons not in government service may be rejected in a civil litigation, in the absence of constitutional or statutory compulsion for such rejection.”
*351 Therefore, the ultimate question as to admissibility of evidence illegally obtained 'by governmental people in civil cases was left open ¡by the Court of Appeals. However, in later cases in the lower courts, the prevailing rule seems to be that “ evidence wrongfully obtained by a public official is not admissible in a civil proceeding ”. (Dwyer v. County of Nassau, 66 Misc 2d 1039 [Meyer, J.]; People v. Horman, 29 A D 2d 569, affd. 22 N Y 2d 378; Incorporated Vil. of Laurel Hollow v. Laverne Originals, 17 N Y 2d 900; Chmielewski v. Rosetti, 59 Misc 2d 335 [Per Curiam]). In Angrisani v. Rosetti (36 Misc 2d 523, 527) the court, in discussing Sadder v. Sadder {supra) notes that: “ There are strong dissenting opinions in this last case urging that the new exclusionary rule should apply alike to civil as to criminal actions ”.
In Rocco v. Travelers Ins. Co. (38 Misc 2d 311, 314) the Supreme Court, Special Term, Oneida County, by Del Vecohio, J., discusses Sadder v. Sadder {supra) and concludes 'as follows : ‘ ‘ This court is of the opinion that there is merit to plaintiff’s position concerning the effect of Mapp and Loria on the Bloodgood dicta. The language of the Court of Appeals enjoining State courts to follow Mapp 1 in all trials ’ is unequivocal. Furthermore, it would seem that there is no valid basis for different rules of admissibility of illegally obtained evidence in criminal and civil litigation; evidence obtained by search and seizure in violation of the Constitution should be excluded in both types of actions.”
Richardson on Evidence (10th ed., § 561, subd. [g]) discusses the scope of the exclusionary rule: “ The rule excluding evidence obtained by an unconstitutional search and seizure is not limited to criminal oases. It has been applied to forfeiture proceedings (Plymouth Sedan v. Pennsylvania, 380 U. S. 693, 85 S. Ct. 1246, 14 L. Ed. 2d 170), to administrative proceedings (Matter of Finn’s Liq. Shop v. State Liq. Authority, 24 N. Y. 2d 647, 249 N. E. 2d 440, 301 N. Y. S. 2d 584) and probably applies to civil cases generally. See Terpstra v. Niagara Fire Ins. Co., 26 N. Y. 2d 70, 256 N. E. 2d 536, 308 N. Y. S. 2d 378. There is however, except in the case of evidence obtained by illegal eavesdropping (CPLR, § 4506), no statutory authority for a pretrial motion in a civil case to suppress evidence obtained by an illegal search and seizure.”
In the instant case, we are dealing with the problem of evidence obtained as a result of a search and seizure by governmental persons which has been found to be illegal. This court believes that the question left open in the Sadder case would *352 now be determined by the Court of Appeals in favor of excluding the evidence. Further, this court concurs with the opinion expressed in Rocco v. Travelers (supra) that there is no valid basis for different rules of admissibility of illegally obtained evidence in criminal and civil litigation.
In view of the foregoing, it is accordingly now ruled as a matter of law in this case, that there was no probable or just cause for the criminal prosecution. It has been conceded that the criminal proceeding terminated in favor of the present plaintiff. The question of malice, however, remains a question of fact for the jury even though the question of probable cause has been determined as a matter of law by the court (Watson v. City of New York, 57 Misc 2d 542). It is well established that while the lack of probable cause may give rise to an inference of malice, sufficient to carry the question to the jury, it is within the province of the jury to accept or reject the inference as iff sees fit (see Prosser, Torts [2d ed.], p. 660; and Stewart v. Sonneborn, 98 U. S. 187, 193).
Accordingly the sole issues which will be presented to the jury for determination by it are the issues of malice and damages. The parties shall submit to the court prior to the closing statements any requests to charge the jury concerning the issues of both malice and damages.