■ WILLIAM L. MCCORMICK, Respondent, v COUNTY OF SUFFOLK et al., Appellants.—In a negligence action to recover damages for personal injuries, the defendants appeal from an order of the Supreme Court, Suffolk County, dated August 8, 1975, which granted plaintiff's motion, made pursuant to CPLR 3103 (subd [c]), to suppress the results of a blood alcohol test. Order modified by adding thereto, after the provision that the motion "is granted", the following: "to the extent that the results of the blood alcohol test may only be used by the defendants on cross-examination of the plaintiff for purposes of impeaching his credibility." As so modified, order affirmed, without costs or disbursements. The plaintiff, a pedestrian, was injured when he was struck by a motor vehicle owned by the defendant Suffolk County Police Department, and operated by one of its employees. Shortly thereafter a blood alcohol test was made by the police from blood drawn by hospital personnel from plaintiff at the direction of the attending physician, while the plaintiff was unconscious in the emergency room. It is plaintiff's contention that this procedure by the police department was a completely unlawful and improper method for obtaining information. The defendants aver that the results of this test, even if illegally obtained, are admissible in a civil proceeding. It is our view that the exigencies of the situation did not require the police to invade a constitutionally protected area by conducting the test in order to obtain evidence in a civil proceeding (see *Schmerber v California,* 384 US 757). The course of action chosen by the police clearly overreached the necessities of the moment, especially as the subject of the test was a pedestrian and the relevance of his blood sample was highly suspect (see *Provenzo v Sam,* 27 AD2d 442). Unlike *Herndon v City of Ithaca* (43 AD2d 634, app dsmd 35 NY2d 956), where the Third Department held that illegally obtained evidence is admissible when the party seeking to exclude it has made an affirmative claim for relief against the governmental body, the government is involved in this simple negligence action not because of any actions taken in its governmental capacity, but only because it owned and operated, through its employee, the motor vehicle which injured plaintiff. The underlying rationale in *Herndon* is

obviously directed to those instances in which civil actions seeking affirmative relief are brought after the government, acting solely in its governmental capacity, prosecuted or otherwise injured the plaintiff. However, the blood sample test is admissible, if deemed relevant by the trial court, with limiting instructions, solely to impeach the plaintiff's credibility. As the Supreme Court of the United States noted in *Walder v United States* (347 US 62, 65): "It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths." Mr. Justice (now Judge) Cooke recognized this in his dissenting opinion in *Herndon* by stating that evidence illegally obtained by government agents must be excluded in the case-in-chief, but that such evidence is admissible to impeach the credibility of a party or witness upon appropriate limiting instructions (see *Herndon v City of Ithaca, supra,* p 637; cf. *People v Johnson,* 27 NY2d 119). Margett, Damiani, Titone and Hawkins, JJ., concur; Hopkins, Acting P. J., dissents and votes to reverse the order and to deny the motion to suppress the results of the blood alcohol test, with the following memorandum: I differ from the majority in that I would hold that the results of the blood alcohol test are admissible in evidence for all purposes, and that, therefore, plaintiff's motion to suppress should have been denied. Once the plaintiff sued the county for damages, he could not enforce any constitutional right protecting him from an unreasonable search and seizure pursuant to the Fourth Amendment. Otherwise, the shield of the Fourth Amendment would become a sword which the plaintiff could use to stifle evidence relevant to his claim (see *Herndon v City of Ithaca,* 43 AD2d 634, 635–636, app dsmd 35 NY2d 956; contra *Provenzo v Sam,* 27 AD2d 442, 445, revd on other grounds 23 NY2d 256; but cf. *Laverne v Incorporated Vil. of Laurel Hollow,* 18 NY2d 635). Moreover, this record is unclear as to whether the test was taken routinely at the hospital as part of the treatment of the plaintiff, or as an attempt to obtain evidence by the police to refute an anticipated action against the county. In any event, I would not suppress evidence which was the result of treatment on behalf of the plaintiff, for the record should be open to all defendants, whether governmental bodies or not.