OPINION OF THE COURT
Vincent Pizzuto, J.
In this motion, petitioner Joseph Ryan is seeking an order pursuant to CPLR 3103 (subd [c]) suppressing a certain statement of petitioner dated July 4, 1975 and directing the respondents Manhattan and Bronx Surface Transit Operating. Authority and the New York City *525 Transit Authority to return all copies thereof to the petitioner.
BACKGROUND
Petitioner is a former employee of Manhattan and Bronx Surface Transit Operating Authority (hereinafter referred to as MABSTOA). On July 3,1975, petitioner, along with a coemployee Sean Tierney, was arrested for possessing approximately $1,600 in coins which were stolen from MABSTOA. During the evening hours of July 3 and the early morning hours of July 4, 1975, petitioner was questioned by various members of the police and the Bronx District Attorney’s office. At some point, the petitioner’s attorney Elliot Fixler arrived and participated in the discussion. As a result of these conversations, the petitioner made a stenographically recorded statement in the presence of his attorney. In that statement, it was agreed that in return for his co-operation with regard to the investigation into the thefts from bus fareboxes, he would be granted immunity from prosecution. Thereupon petitioner recounted numerous details and responded to various inquiries concerning his involvement in the farebox scam. It is this stenographic statement which is sought to be suppressed by the petitioner.
Several days after making the aforesaid statement, petitioner was fired from his position with MABSTOA.[1] Shortly thereafter, he ceased co-operating with the officers investigating the farebox scam. On or about April 16,1976, petitioner and his present attorney met with the Assistant District Attorney in charge of this case. At that conference, petitioner was advised that if he testified in the Grand Jury he would be granted immunity but if he refused to so testify, evidence would be presented to the Grand Jury against him. Petitioner refused to co-operate any further and was subsequently indicted by the Grand Jury and charged with grand larceny and criminal possession of stolen property.
On February 17,1977, a hearing was held before Justice Silbermann as to the admissibility of the stenographic *526 statement. It was the contention of the petitioner that the District Attorney had conferred full transactional immunity upon him at the time he uttered the statement. The District Attorney took the position that it was only his intention of granting petitioner immunity some time in the future, after he had complied with the terms of the agreement. Justice Silbermann ultimately held that the District Attorney’s office had conferred immunity upon the petitioner on July 4, 1975, and dismissed the indictment.[2] Following this dismissal, petitioner sought reinstatement to his position with MABSTOA. On December 13, 1978 an administrative hearing was commenced to consider petitioner’s request. At that time, a copy of the stenographic statement was distributed to the panel members. Petitioner thereupon sought and was granted an adjournment sine die.
Sometime in 1980, petitioner moved in Supreme Court, Bronx County, for an order pursuant to CPL 240.10 (subd 2) and 710.70 directing the respondent herein to return the stenographic statement.[3] In support of his motion, petitioner’s attorney stated as follows: “It is submitted to the Court that the present hearing before mr. kheel, to wit: to determine whether mr. ryan was properly dismissed for his misconduct at the Manhattan and Bronx Surface Transit Operating Authority is a quasi criminal proceeding and that introduction of mr. ryan’s July 4, 1975 statements would be in violation of Justice Silbermann’s order directing the suppression of same contrary to the interest of justice.” In response to that motion, the District Attorney pointed out that CPL 240.10 (subd 2) was limited to discovery and CPL 710.70 referred to tangible property taken from the defendant’s person, and therefore was not applicable to the statement made by the petitioner. By decision dated March 24, 1980 Justice Cohen denied that portion of the motion directed against the respondents herein on the grounds that they had not been served with the motion papers.[4]
*527 On the basis of Justice Cohen’s decision, petitioner made a second motion in 1981 for a return of the statement, relying on the sealing provisions of CPL 160.50. In opposing this second motion, the present respondents pointed out that CPL 160.50 only authorizes the return of photographs, photographic plates or proofs, palmprints, and fingerprints, but not statements. In addition, the respondents argued that the statement did not constitute an official record or paper that would be the subject of sealing. In a decision dated August 21, 1981, Justice Silverman denied the requested relief sought by petitioner.
COLLATERAL ESTOPPEL
Respondents argue that inasmuch as they were made parties to the 1981 motion, the petitioner should be collaterally estopped from raising the identical relief in the present motion before the court. Collateral estoppel or issue preclusion operates to preclude relitigation of discrete issues of law and fact determined or necessarily determined in a prior action or proceeding, and may arise where the parties are the same and one is barred from relitigating an issue which was adjudicated in the prior action or where the parties are not the same but nonetheless one of the parties to the subsequent action is foreclosed from relitigating an issue which was determined in the first action. (Matter of American Ins. Co. [Messinger — Aetna Cas. & Sur. Co.], 43 NY2d 184, 189, n 2; Brown v Lockwood, 76 AD2d 721, 735.) Although it is clear that the parties herein are identical to the parties who were before Justice Silverman in 1981, it is not entirely clear whether there exists an identity of issue between these two proceedings.
More specifically, for the doctrine of issue preclusion to apply it is required that the issue as to which preclusion is sought be identical with the issue decided in the prior proceeding. In other words, it is essential that the issue has been necessarily decided in the prior proceeding and that the litigant who will be held precluded in the present proceeding have had a full and fair opportunity to litigate *528 the issue in the prior proceeding (Gilberg v Barbieri, 53 NY2d 285, 291; Schwartz v Public Administrator of County of Bronx, 24 NY2d 65, 71). Even though at first blush, the denial of petitioner’s prior motion by Justice Silverman may seem significant upon the question of identity of issue, a closer analysis reveals that the present motion is not a mirror image of the prior 1981 motion. It is not without significance therefore that petitioner’s prior motion was made pursuant to the sealing provisions of CPL 160.50. In this respect petitioner’s attorney argued:
“That prior to this motion, the defendant has had his fingerprints and photographs returned, pursuant to Section 160.50 of the Criminal Procedure Law. Copies of these documents are annexed hereto. However, the statements taken by the Assistant District Attorney, has not been sealed in light of Section 160.50, and, in light of the suppression motion entered by Justice Silverman.
“In fact, mabstoa and the new york city transit authority, are in possession of said statements. It is your affirmants position, that the Bronx District Attorney’s Office, order that the original, and all copies of said statements be returned forthwith, pursuant to Section 160.50 of the Criminal Procedure Law. Unquestionably, the statute requires the Court to enter such an order.”
As noted previously, the respondents herein, when they opposed the prior motion, argued that the petitioner’s statement does not fall within the definition of official records and papers as contained in CPL 160.50 (subd 1, par [c]) or within the ambit of returnable items as contained in CPL 160.50 (subd 1, par [a]).
In point of fact the Appellate Division, Second Department, has recently held that a statement given by a defendant in a criminal action to the District Attorney is not protected under the provisions of CPL 160.50 (Matter of Anonymous, 95 AD2d 763). In that case, the petitioner Grievance Committee for the Second and Eleventh Judicial Districts sought to obtain a taped confession of respondent after his conviction was reversed and the indictment dismissed. In granting that petitioner’s relief the appellate court declared (p 764) “[b]ut more significantly, there is no need for us to exercise such power [i.e., unseal the record] *529 since petitioner is otherwise entitled to access to the tape recording herein for the reason that said recording does not constitute part of the official records and papers in the criminal proceeding involving the respondent and therefore is not subject to the protections afforded by CPL 160.50”. It is apparent therefore, that the decision of the Bronx Supreme Court on August 21, 1981 did nothing more than deny petitioner any relief because the stenographic statement could not be made subject to a sealing order. This is a far cry from deciding the merits of a claim which alleges that evidence suppressed in a criminal proceeding must be similarly suppressed in a subsequent civil proceeding. Accordingly, it is clear that the essential prerequisite of identity of issue has not been met (compare Kret v Brookdale Hosp. Med. Center, 93 AD2d 449).
THE SUPPRESSION ISSUE
Reaching the merits of this motion, this court must determine whether or not the stenographic statement should be suppressed from the pending reinstatement hearing due to the dismissal of petitioner’s criminal case. In this respect, petitioner argues that:
“It is respectfully submitted that such statements were either obtained in violation of Judge Silbermann’s Order or, if obtained prior to the Order, were improperly retained in violation of that Order. Certainly, the import of Justice Silbermann’s Order would be reduced to a nullity, should the aforesaid individuals be permitted to retain duplicate copies of the subject statement.
“My attorney has advised me, and I submit to this Court that New York Law, particularly CPLR Section 3103(c) authorizes this Court to order that the statement be suppressed, since it has been improperly or irregularly obtained or retained, thus relating in substantial prejudice to me.”
Although petitioner harps upon the fact that this statement was suppressed in the prior criminal proceeding, this court is not convinced that this is a correct statement of the facts.[5] A much more likely scenario is that the criminal *530 indictment was dismissed due to the fact that Justice Silbermann found that the Bronx District Attorney had previously granted the petitioner immunity.[6] Under these circumstances, suppressing the stenographic statement would have been superfluous. In any event, whether or not this statement was suppressed is of no moment. What is crucial, however, is whether it can be said that the statement was illegally obtained. This is because evidence that is illegally or unconstitutionally seized for the purpose of a criminal investigation may not be subsequently utilized in a civil proceeding (Matter of Malik v New York State Liq. Auth., 30 AD2d 1040, affd sub. nom. Matter of Finn’s Liq. Shop v State Liq. Auth., 24 NY2d 647, cert den 396 US 840).
In applying this rule courts have held that “ ‘it would seem that there is no valid basis for different rules of admissibility of illegally obtained evidence in criminal and civil litigation; evidence obtained by search and seizure in violation of the Constitution should be excluded in both types of actions’ ” (Irizarry v City of New York, 79 Misc 2d 346, 351). Accordingly, illegally obtained evidence has been suppressed in forfeiture proceedings (Plymouth Sedan v Pennsylvania, 380 US 693), replevin actions (Dwyer v County of Nassau, 66 Misc 2d 1039; Chmielewski v Rosetti, 59 Misc 2d 335), and civil proceedings (Irizarry v City of New York, supra; Terpstra v Niagara Fire Ins. Co., 26 NY2d 70). However, the common thread running throughout these cases is an illegal or unconstitutional search or seizure in the first instance. What appears lacking in this case is some illegality that would taint the stenographic statement made by the petitioner herein. Although petitioner alleges that, “at the time, due to the extreme coercion, stress and strain to which I was subjected, I was forced to make a statement before a stenographer”, that does not necessarily constitute a constitutional illegality.
The evidence clearly indicates that the statement was made by petitioner in the presence of his prior attorney, Elliot Fixler. Any attack therefore against the legality of this statement on the grounds that it violated the mandate *531 of Miranda v Arizona (384 US 436) would be doomed to failure (cf. People v Arthur, 22 NY2d 325; People v Hobson, 39 NY2d 479; People v Rogers, 48 NY2d 167). Nor is there any evidence that the statement was other than voluntarily made. Accordingly, notwithstanding the dismissal of the criminal indictment, the stenographic statement was not imbued with any illegal taint that would require its suppression in a civil proceeding.
Furthermore, none of the cases cited by the petitioner removes this initial requirement of having illegally seized evidence. Thus, in Monserrate v Upper Ct. St. Book Store (49 NY2d 306), the illegally obtained evidence was obscene books seized under an invalid search warrant. Again, in McCormick v County of Suffolk (53 AD2d 690), the illegally obtained evidence was blood taken from a person unconscious in the emergency room of a hospital. Finally, in Herndon v City of Ithaca (43 AD2d 634), the illegally obtained evidence was $4.75 in quarters and nickels taken from the trousers of that plaintiff after he was shot and while he was in the hospital. The distinguishing feature between these cases and the situation at bar is not the nature of the evidence that was initially seized. Thus, it makes no difference that these cases involve a seizing of “physical evidence” in violation of the Fourth Amendment, whereas in petitioner’s case, a “statement” was obtained allegedly in violation of the Fifth Amendment. In either case, evidence that has been illegally seized may not be used affirmatively by the government in a subsequent civil action against the person from whom such evidence was obtained.
What is lacking in this case, however, is an “illegally obtained statement.” Notwithstanding the tantalizing adjectives used by petitioner to describe the uttering of the statement in question, this court does not concur with the allegation that this statement was illegally obtained. As stated above, there is no evidence that this statement was specifically suppressed by the Bronx Supreme Court or that it would be subject to a successful attack for violating the petitioner’s Fifth or Sixth Amendment rights. Accordingly, even though the petitioner has followed the correct procedure, by moving pursuant to CPLR 3103 (subd [c]) for *532 an order suppressing illegally obtained evidence from the reinstatement proceeding (Monserrate v Upper Ct. St. Book Store, supra), the stenographic statement of July 4, 1975 was neither the result of any illegal taking nor a violation of any of petitioner’s constitutional rights. Moreover, notwithstanding petitioner’s protestations to the contrary, Justice Silbermann did not suppress this statement.[7] Obviously, without an illegally obtained statement, any redress to CPLR 3103 (subd [c]) is a moot question.
Alternatively, the relief requested herein must also be denied on the basis of Herndon v City of Ithaca (supra). In that case, the Appellate Division, Third Department, affirmed a jury verdict which found no cause of action against the defendant. As part of the defense case, the City of Ithaca was allowed to introduce $4.75 in change obtained as a result of an illegal search of the plaintiff’s clothing (43 AD2d, supra, at p 635). That court went on to hold (p 636) that, “ Tt is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government’s possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths.’ ”[8] The courts have announced that the constitutional shield preventing illegally seized evidence from being used against a defendant at trial cannot be “perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances” (Harris v New York, 401 US 222, 226; see, also, United States v Havens, 446 US 620, 626; Oregon v Hass, 420 US 714, 722-723). The petitioner herein, like the plaintiff in Herndon v City of Ithaca, is attempting to shield himself in the reinstatement hearing with MABSTOA from being cast in the role of a thief, by *533 the artifice of removing his stenographic statement from being considered on the question of his reinstatement. This he may not be permitted to do.
Since the court finds the statement of July 4, 1975 is not tainted by any illegality, and that even if it was, it may still be considered at the reinstatement hearing, the motion by the petitioner for an order pursuant to CPLR 3103 (subd [c]) suppressing this statement and directing the respondents to return all copies thereof to the petitioner, is in all respects denied.

. Although petitioner alleges that in return for making his statement, he was assured that his co-operation would insure retaining his employment at MABSTOA, there is nothing in the stenographic statement to this effect.

. This was a closed hearing, the minutes of which were ordered to be sealed. Other than an oral decision there was no writing memorializing Justice Silbermann’s decision. This court has ascertained that the sealed minutes of this hearing cannot be found.

. Refers to former CPL 240.10 (subd 2) which was repealed by chapter 412 of the Laws of 1979.

. That court, citing Matter of Finn’s Liq. Shop v State Liq. Auth. (24 NY2d 647) and *527 People ex rel. Piecarillo v New York State Bd. of Parole (48 NY2d 76), did direct the District Attorney’s office to refrain from making available to any other agency any suppressed statements.

. Notwithstanding the decision of Justice Cohen on March 24,1980 which referred to “any suppressed statement”, it is not clear that the court specifically made a finding that the stenographic statement had indeed been suppressed.

. The fact that this petitioner in fact argued this precise point, i.e., that he had been granted immunity, makes this scenario that much more likely.

. The certificate of disposition relied on by petitioner merely states that “on 2/17/77 the indictment against the above named defendant was dismissed by the Honorable Silbermann, a Justice of the Supreme Court.”

. Insofar as the petitioner in his memorandum of law argues that Herndon v City of Ithaca (43 AD2d 634), stands for the proposition that: “The Court concludes that, while the person making the statement which is later suppressed may be faced with that statement, should he choose to later perjure himself, such statement may not be used as evidence in chief against him, where he has not opened the door by testifying contrary to the contents of the suppressed statement”, he is mistaken, since that proposition is from the dissenting opinion by Justice Cooke.